have hereunder to Owner or any Owner Indemnified Party on account of a covered claim under any insurance policy wherein Contractor is a named insured or an additional insured out of any insurance proceeds received by Contractor. Contractor may not use any such insurance proceeds for any purpose other than the discharge of such payment obligation unless and until such payment obligation has been discharged in full. Owner assumes no responsibility for the solvency of any insurer or surety, the failure of any insurer or surety to perform in accordance with its obligations, or the delay of an insurer in adjusting or responding to an insured or bonded event.

O.     <u>Subcontractors</u>. Before permitting a Subcontractor to perform any portion of the Work at the Project site or laydown area, Contractor shall obtain a certificate of insurance from such Subcontractor evidencing that Subcontractor has obtained insurance from carriers approved to conduct insurance business in the United States and policies for worker's compensation (if applicable), employer's liability, and auto liability insurance, insurance required under applicable Laws, and such other insurance (if any) as is required of Subcontractor hereunder or is standard in the industry for the work being performed by such Subcontractor in such amounts, against such risks, and on such terms as is reasonably prudent in light of the work to be performed by Subcontractor (subject to the commercial availability of such insurance) and commensurate with normal practices in the United States.

P.     <u>Owner Right to Procure</u>. If Contractor fails to maintain the coverages specified above, Owner shall have the right and option to secure on behalf of Contractor any of the coverages listed in this Exhibit "B" required to be carried by Contractor, on terms equivalent to the terms set forth herein, and upon the exercise of such option, the Contract Price shall immediately be reduced by such amount of Contractor's costs for carrying and maintaining such coverage as provided in this Exhibit "B". In such event, the Parties shall execute a Change Order to reduce the Contract Price and to include such insurance in procured herein. The reduction in Contract Price shall take into account any material differences between the terms and conditions of the coverage(s) Owner secured hereunder and the terms and conditions of Contractor's coverage(s).

App. 00182

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

RCON365    JPEARSON

DATE (MM/DD/YYYY)
10/13/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Fisher Brown Bottrell Insurance, Inc. P. O. Box 1490 Jackson, MS 39215 | PHONE (A/C, No, Ext): (601) 960-8200 | | FAX (A/C, No): (601) 208-7484 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Travelers Casualty Insurance Company of America | | 19046 |
| INSURED | INSURER B : | | |
| Pierce Construction & Maintenance Company, Inc. P.O. Box 485 Petal, MS 39465 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | X | | 6301G523312 | 08/01/2017 | 08/01/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY PRO- JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | X | | 8402G185119 | 08/01/2017 | 08/01/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR | | | ZUP81M3807517 | 08/01/2017 | 08/01/2018 | EACH OCCURRENCE | $ 10,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 10,000,000 |
| | DED X RETENTION $ 10,000 | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | UB1G523312 | 08/01/2017 | 08/01/2018 | X PER STATUTE OTH- ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
GL and WOS
The general liability and automobile policies have a blanket additional insured and blanket waiver of subrogation endorsement that will apply to the certificate holder as required by written contract.
The blanket additional insured endorsement is primary and non-contributory.
The workers compensation has a blanket waiver of subrogation endorsement that will apply to the certificate holder as required by written contract.
The general liability and automobile policies have a 30 day notice to others of cancellation provision.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| KP Engineering LP 5555 Old Jacksonville Hwy Tyler, TX 75703 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Sam B. Sadler* |

ACORD 25 (2016/03)     © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

    App. 00183

# EXHIBIT C

## NO COPY

## PROJECT RULES

# EXHIBIT E

App. 00185

**LABOR RELATIONS**    **EXHIBIT "E"**    **J-1711-UNG-001**

### ARTICLE 1    POLICY STATEMENT

**1.1**    Labor relations in the United States remain a complex issue governed primarily by National, State, or local laws as well as signed agreements. It is Contractor's intent to work with contractors and subcontractors without regard to the existence of a signed labor agreement.

**1.2**    It is not Contractor's intent to take precedence over National or State laws and requirements regarding executing work with Merit Shops, Open Shops, or Union Shops or the requirements for executing work on multi-employer work sites. As such, nothing contained herein shall supersede laws or requirements of any National, State, or local government.

### ARTICLE 2    MERIT CONTRACTOR

**2.1**    Contractor is a merit contractor, and as such, may execute work jointly with Open Shop, Merit Shop, or Union Contractors without prejudice.

**2.2**    Contractor may issue subcontracts to Open Shop, Merit Shop, or Union Contractors for similar work efforts for this project.

**2.3**    Owner and Contractor reserve all rights to execute the work with contractors and subcontractors of its choosing.

### ARTICLE 3    SUBCONTRACTOR'S COOPERATION

**3.1**    Subcontractor acknowledges the project is a multi-employer work site and Contractor is not affiliated with all contractors or subcontractors that may execute work within the Targa facility located in Midland.

**3.2**    Subcontractor agrees that work assignments for this project are governed in accordance with Subcontract Documents and not by any other source or organization.

**3.3**    Contractor acknowledges that work assignments for the work scope of the Subcontract Agreement are established by the Subcontractor.

**3.4**    Subcontractor agrees it is required for all contractors and subcontractors to work alongside each other within the same Targa facility and it is necessary for each to perform the work in the spirit of cooperation.

**3.5**    Subcontractor shall ensure craft personnel perform the work without interfering with the Owner's facility operation or employees, other contractor or subcontractor craft personnel, or work by any contractor or subcontractor.

**— END of EXHIBIT —**

# EXHIBIT H

**SPECIAL PROVISIONS**          **EXHIBIT "H"**          J-1711-UNG-001

*ARTICLE 1    TAXES AND FEES*

**1.1**     The Subcontract Price shall include all Taxes in connection with the including: (i) Taxes on Equipment and all other Work; and (ii) applicable Texas state and local sales and use taxes on all Work and Equipment. Subcontractor shall be responsible for the payment of all such Taxes and such applicable Texas state and local sales and use taxes. Subcontractor shall reasonably cooperate with Contractor and Owner to minimize any and all applicable Texas State and local Sales and Use Taxes relating to the Work. [3.22.A(i)]

**1.2**     Subcontractor shall be exclusively responsible for any and all taxes imposed on Subcontractor and/or payments under this Subcontract Agreement by any taxing entities based upon: (i) the wages and salaries paid to Subcontractor's employees for services rendered under this Agreement, and (ii) the gross profits earned by Subcontractor, and shall indemnify and hold Owner and Contractor harmless from any and against all liability in connection therewith. All other taxes, including but not limited to, sales and use, gross receipts, value-added, franchise, property, and other similar taxes imposed by any governmental entity or taxing authorities are the responsibility of Owner. Subcontractor agrees that each tiered Subcontractor who performs any part of the Work shall accept the same responsibility and liability with respect to the Tax or Taxes of such tiered Subcontractor.

**1.3**     Subcontractor shall pay and be responsible for any and all sales and use taxes on the lease or purchase of supplies, tools, parts, machinery, equipment, or services consumed or otherwise used by Subcontractor in the performance of the Work ("Consumable Sales Taxes"). Such Consumable Sales Taxes shall not be included on invoices to Contractor as a separate charge.

**1.4**     Subcontractor acknowledges that for purposes of sales and use Taxes, this Subcontract Agreement is a separated contract whereby Subcontractor agrees to cooperate with Owner and Contractor to separately state categories of taxable and nontaxable goods and services in order to minimize the amount of sales and use Taxes applicable to such goods and services. Subcontractor further agrees that Subcontractor shall enter into separately stated agreements with any tiered Subcontractor who performs any part of

the Work and invoices therefore shall similarly conform to the invoice format requested by Contractor. Any applicable sales and use Taxes must be stated as a separate line item except for Consumables Sales Taxes as described in Section 1.3. Further, to the extent applicable, Subcontractor shall issue, and cause any lower tiered subcontractors to issue, properly completed Texas Resale Certificates or other exemption certifications or other documentation, as appropriate, and shall take such other actions as are necessary or advisable, in order to claim, obtain or evidence that the sale of such taxable items is exempt or otherwise not taxable for Texas sales and use tax purposes. [3.22A(i)]

**1.5**     Contractor and Owner shall have no liability to Subcontractor under this Agreement or otherwise for any sales and use taxes paid, directly or indirectly, by Subcontractor or any of its subcontractors with respect to such taxable items, including as a result of Subcontractor's failure to comply, or to cause any of its subcontractors to comply, with the immediately preceding sentence or otherwise to avail itself of the benefit of any exemption it may receive, including the resale exemption. As used herein, the term "taxable item" has the meaning assigned to that term in Section 151.010 of the Texas Tax Code. [3.22.A(i)]

**1.6**     **SUBCONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD OWNER HARMLESS FROM ANY LIABILITY TO THE EXTENT RESULTING FROM SUBCONTRACTOR'S OR ANY OF ITS SUBCONTRACTORS' FAILURE TO MAKE TIMELY PAYMENT OF THE APPLICABLE TAXES AND CONTRIBUTIONS WITHIN THEIR SCOPE OF RESPONSIBILITY OR FAILURE TO COMPLY WITH THE REPORTING, RETURN OR OTHER PROCEDURAL OR LEGAL REQUIREMENTS WITH RESPECT TO SUCH PAYMENTS, INCLUDING ANY INTEREST, PENALTIES, COSTS OR LIABILITIES ARISING FROM SUCH FAILURES AND INCLUDING WITHOUT LIMITATION, ALL EXPENSES FOR LITIGATION, COURT COSTS, AND REASONABLE ATTORNEYS FEES SHALL BE SOLELY FOR SUBCONTRACTOR'S ACCOUNT.**

**1.7**     Contractor and/or Owner shall (by itself or through a representative) have access at all reasonable times during the course of the Work and for a period six (6) years after the Completion Deadline to all of the information, books, and records in connection with tax

SPECIAL PROVISIONS                    EXHIBIT "H"                    J-1711-UNG-001

matters (including sales and use tax matters).
[3.22C]

### ARTICLE 2    BUILDING PERMITS

2.1      Targa will be responsible for the acquisition, including but not limited to, of environmental permits, emissions permits, United States Army Corps of Engineers permits, Harris County Floodplain Management Permit, permanent utilities tie-in permits and operating permits.

2.2      Subcontractor will obtain necessary Contractor licenses and:

- will obtain and / or maintain SPCC and SWPPP permits during construction;

- assist Contractor / Owner in acquiring temporary utility permits if necessary

2.3      Contractor will obtain Upton County Construction permits necessary for construction of Cryo unit with assistance, as needed, from Sub-contractor.

2.4      If additional municipal building permits are required, Subcontractor shall assist Contractor in obtaining building, fire department, or other permits that may be required.

2.5      Final payment will not be made until all City required inspections are complete and the permit is closed.  Copies of final inspections and sign off must be submitted to Contractor.

-- END of EXHIBIT --

# EXHIBIT I

App. 00190

QUALITY                          EXHIBIT "J"                          J-1711-UNG-001

### ARTICLE 3   SUBCONTRACTOR SUPPLIED MATERIAL

**3.1**   Subcontractor supplied material will preferentially be supplied from domestic mills, however, materials from Japan, Spain, Germany, France, Italy, or Canada may be use for optimum price and delivery. No material will be accepted from India, China, Mexico, of Eastern European mills without specific written approval from Contractor.

### ARTICLE 4   NON-CONFORMANCE

**4.1**   If, at any time during the progress of the Work, any Work is determined by Subcontractor, Contractor, or Owner to be defective or in non-conformance with this Subcontract, Subcontractor will, at its sole expense, immediately remove and replace or correct such defective Work.

**4.2**   In case the Subcontractor shall neglect or refuse to remove or replace said materials within twenty-four (24) hours after written notice to do so has been received, such materials shall be removed at the direction of the Contractor, and the cost thereof, including administrative charges, shall be deducted from any monies due the Subcontractor.

### ARTICLE 5   ACCEPTANCE

**5.1**   Within a reasonable time after receipt of notice from Subcontractor that Work, or a portion of the Work, is completed and ready for inspection, Contractor shall make such inspection, as it may deem necessary. If the Work is acceptable, Contractor shall give Subcontractor written acceptance of such Work. If not accepted, the Contractor shall provide details stating the reasons for such non-acceptance.

**5.2**   Neither the inspection and acceptance of the Work nor any payment, including the final payment, under this Subcontract shall be construed to be an acceptance of defective material nor workmanship or evidence of Subcontractor's proper performance of the Work, and such acceptance and/or payment shall not relieve Subcontractor of any of its obligations.

### ARTICLE 6   CONTRACTOR AND OWNER REQUIREMENTS

**6.1**   The following Sections of Contractor's Construction Quality Guidelines (dated March 24, 2015) apply to this Subcontract.

   .a   All Sections

-- END of EXHIBIT --

# APPENDIX "B"

App. 00192

INVICE



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

### INDUSTRIAL DIVISION

POST OFFICE BOX 485                                      PETAL, MS 39465

PHONE 601 -544 -1321              FAX 601   -544 -3371              PIERCEPCM.COM

SOLD TO:                                                    INVOICE NUMBER: IND6097-IN

KPE ENGINEERING, LP                                          INVOICE DATE: 5/4/2018
5555 OLD JACKSONVILLE HWY                          JOB/ORDER NUMBER: 1770918
TYLER, TX  75703                                               ORDER DATE: 5/4/2018
                                                                    SALESPERSON:
                                                           CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| J1711-090 | | | NET 60 | |
| **ITEM #** | **DESCRIPTON** | | | **AMOUNT** |

PURCHASE ORDER # J1711-090

ITEM # 1
COST CODE: 9-1-900
DESCRIPTION:
INSTALLATION OF
UNDERGROUND PIPING IN
ACCORDANCE WITH
PCM'S QUOTE # 177091

|  | AMOUNT | $ 1,193,947.00 | |
|---|---|---|---|
| IND | | 10% RETAINAGE | 119,394.70 |
| IND | | 100% COMPLETE TO DATE | 0.00 |

SCR NO. 001
COST CODE 9-1-300
ITEM # 3
T & M WORK FOR ADDITIONAL
TRENCH EXCAVATION
TO ALLOW FOR BEDDING SAND

|  | AMOUNT | $ 28,598.50 | |
|---|---|---|---|
| IND | | 10% RETAINAGE | 2,859.85 |
| IND | | 100% COMPLETE TO DATE | 0.00 |

Continued

App. 00193



**INVOICE**

Page:     2

## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485                                        PETAL, MS 39465
PHONE 601-544-1321          FAX 601   -544-3371                PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6097-IN
INVOICE DATE: 5/4/2018
JOB/ORDER NUMBER: 1770918
ORDER DATE: 5/4/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O.<br>J1711-090 | SHIP VIA | F.O.B. | TERMS<br>NET 60 |
|---|---|---|---|

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | SCR NO. 002<br>COST CODE 9-1-300<br>ITEM # 4<br>22 EACH SUPPORT SHOES 24-12-1<br>LINE NUMBER 6"-HC-1193-1CSX-1.5ET<br>DWG NO. 86-1193-03F<br>AMOUNT        $ 13,960.00 | |
| IND | 10% RETAINAGE | 1,396.00 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | SCR NO. 003<br>COST CODE 9-1-300<br>ITEM # 5<br>109 EACH ADDITIONAL WELDS<br>FROM IFB TO IFC DRAWINGS<br>AMOUNT        $ 97,680.00 | |
| IND | 10% RETAINAGE | 9,768.00 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | SCR NO. 004<br>COST CODE 9-1-300<br>ITEM # 7<br>COATING 109 EACH ADDITIONAL<br>WELDS FROM IFB TO IFC DRAWINGS<br>AMOUNT        $ 45,598.00 | |
| IND | 10% RETAINAGE | 4,559.80 |
| IND | 100% COMPLETE TO DATE | 0.00 |

Continued



## INVOICE



**PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.**

**INDUSTRIAL DIVISION**

**POST OFFICE BOX 485**

PHONE 601 -544 -1321        FAX 601   -544 -3371

**PETAL, MS 39465**

PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6097-IN
INVOICE DATE: 5/4/2018
JOB/ORDER NUMBER: 1770918
ORDER DATE: 5/4/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | SCR NO. 005 | |
| | COST CODE 9-1-300 | |
| | ITEM # 12 | |
| | ADDED SCOPE OF WORK FROM | |
| | DRAWING REVISIONS RESULTING | |
| | IN ADDED WELDS, EXTRA COATING, | |
| | INSTALLATION OF PADS ON | |
| | SLEEPER RACKS, ADDITIONAL | |
| | FOOTAGE ON BORE | |
| | AMOUNT        $ 215,122.00 | |
| IND | 10% RETAINAGE | 21,512.20 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | | |
| | SCR NO. 007 | |
| | COST CODE 9-1-300 | |
| | ITEM # 9 | |
| | 40 ADDITIONAL WELDS NOT IN | |
| | ORIGINAL SCOPE | |
| | AMOUNT        $ 62,449.00 | |
| IND | 10% RETAINAGE | 6,244.90 |
| IND | 100% COMPLETE TO DATE | 0.00 |

Continued

App. 00195

INVOICE



# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

## INDUSTRIAL DIVISION

POST OFFICE BOX 485                                    PETAL, MS 39465

PHONE 601 -544-1321          FAX 601   -544-3371                    PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER:  IND6097-IN
INVOICE DATE:  5/4/2018
JOB/ORDER NUMBER:  1770918
ORDER DATE:  5/4/2018
SALESPERSON:
CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | SCR NO. 008 | |
| | COST CODE 9-1-300 | |
| | ITEM # | |
| | REIMBURSEMENT FOR COST TO | |
| | EXCAVATE UNFORESEEN CALICHE | |
| | ROCK, BACKFILL SAND PADDING | |
| | BOTTOM OF TRENCH, AND BACKFILL | |
| | SAND ABOVE PIPING | |
| | AMOUNT       $ 36,178.85 | |
| IND | 10% RETAINAGE | 3,617.89 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | | |
| | SCR NO. 009 | |
| | COST CODE 9-1-300 | |
| | ITEM # 8 | |
| | FABRICTE AND INSTALL NEW 12" | |
| | RESIDUE LINE IN AREA 80 TO | |
| | EXISTING LINE FROM AREA 80 TO | |
| | AREA 86 CAP NEW EMERGENCY | |
| | FUEL GAS LINE ON WEST SIDE | |
| | OF ROAD AND INSTALL NEW | |
| | EMERGENCY GAS LINE ON EAST SIDE | |
| | OF ROAD IN ACCORDANCE WITH | |
| | SCR-009 | |
| | AMOUNT       $ 81,400.00 | |
| IND | 10% RETAINAGE | 8,140.00 |
| IND | 100% COMPLETE TO DATE | 0.00 |

Continued

App. 00196

INVOICE

Page:     5

 PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

INDUSTRIAL DIVISION

POST OFFICE BOX 485

PHONE 601 -544 -1321        FAX 601    -544 -3371

PETAL, MS 39465
PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX  75703

INVOICE NUMBER: IND6097-IN
INVOICE DATE: 5/4/2018
JOB/ORDER NUMBER: 1770918
ORDER DATE: 5/4/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. J1711-090 | SHIP VIA | F.O.B. | TERMS NET 60 | |
|---|---|---|---|---|
| ITEM # | DESCRIPTION | | | AMOUNT |

| | | |
|---|---|---|
| | SCR NO. 011<br>COST CODE 9-1-300<br>ITEM # 13<br>TARGA REQUESTED THAT ALL<br>EXISTING LINES HAD TO BE<br>HYDRO EXCAVATED, ALL LINES<br>COULD NOT BE IDENTIFIED IN<br>THE BIDDING PROCESS WHICH<br>ADDED 39 DAYS OF HYDRO<br>EXCAVATION<br>AMOUNT        $ 136,500.00 | |
| IND | 10% RETAINAGE | 13,650.00 |
| | SCR NO. 012<br>COST CODE 9-1-300<br>LINE # 14<br>COST TO HYDRO VAC AS REQUESTED<br>BY TARGA IN THE OSBL AREA<br>PRIOR TO ANY EXCAVATION<br>ACTIVITIES<br>AMOUNT        $ 147,000.00 | |
| IND | 10% RETAINAGE | 14,700.00 |
| IND | 100% COMPLETE TO DATE | 0.00 |

Continued

App. 00197

INVOICE

Page:     6



# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
## INDUSTRIAL DIVISION

POST OFFICE BOX 485                                    PETAL, MS 39465
PHONE 601 -544 -1321        FAX 601    -544 -3371              PIERCEPCM.COM

SOLD TO:                                          INVOICE NUMBER:  IND6097-IN

KPE ENGINEERING, LP                                INVOICE DATE:  5/4/2018
5555 OLD JACKSONVILLE HWY                      JOB/ORDER NUMBER:  1770918
TYLER, TX  75703                                    ORDER DATE:  5/4/2018
                                                   SALESPERSON:
                                             CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | SCR NO. 013 | | |
| | COST CODE 9-1-300 | | |
| | ITEM # 15 | | |
| | ADDITIONAL WORK PERFORMED | | |
| | AND MATERIALS PROVIDED | | |
| | ON UNDERGROUND PIPING | | |
| | AMOUNT        $ 479,390.25 | | |
| IND | 10% RETAINAGE | | 47,939.03 |
| IND | 100% COMPLETE TO DATE | | 0.00 |
| | | | |
| | SCR NO. 014 | | |
| | COST CODE 9-1-300 | | |
| | ITEM # | | |
| | TIME AND MATERIALS WORK | | |
| | OFF LOADING VARIOUS TRUCKS | | |
| | NOT PERTAINING TO PIERCE | | |
| | SCOPE OF WORK | | |
| | AMOUNT        $ 5,917.00 | | |
| IND | 10% RETAINAGE | | 591.70 |
| IND | 100% COMPLETE TO DATE | | 0.00 |

Continued

App. 00198

**INVOICE**

Page:    7



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485                                   PETAL, MS 39465

PHONE 601-544-1321          FAX 601   -544-3371                 PIERCEPCM.COM

SOLD TO:                                        INVOICE NUMBER:  IND6097-IN

KPE ENGINEERING, LP                              INVOICE DATE: 5/4/2018
5555 OLD JACKSONVILLE HWY                  JOB/ORDER NUMBER:  1770918
TYLER, TX 75703                                   ORDER DATE: 5/4/2018
                                                 SALESPERSON:
                                           CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | SCR NO. 015 | | |
| | COST CODE 9-1-300 | | |
| | ITEM # | | |
| | HYDRO-VAC IN THE OSBL AREA | | |
| | PRIOR TO EXCAVATING DITCHES | | |
| | FROM 2/20/18 THRU JOB | | |
| | COMPLETION | | |
| | AMOUNT        $ 52,500.00 | | |
| IND | | 10% RETAINAGE | 5,250.00 |
| IND | | 100% COMPLETE TO DATE | 0.00 |

| | |
|---|---|
| Net Invoice: | 259,624.07 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 259,624.07 |

INVOICE

Page: 1



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485         PETAL, MS 39465

PHONE 601 -544 -1321     FAX 601   -544 -3371         PIERCEPCM.COM

**SOLD TO:**

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6115-IN
INVOICE DATE: 5/23/2018
JOB/ORDER NUMBER: 1871238
ORDER DATE: 5/22/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-190 | |
| | ITEM # 1<br>COST CODE: 9-1-400<br>DESCRIPTION:<br>PROVIDE LABOR AND EQUIPMENT<br>TO ASSIST IN THE MECHANICAL<br>PORTION OF THE PROJECT. | |
| | T & M FOR WEEK 5/13/18 - 5/19/18<br>TIMESHEETS ATTACHED | |
| IND | AMOUNT | 111,818.93 |

| | |
|---|---|
| Net Invoice: | 111,818.93 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 111,818.93 |

INVOICE

Page:      1



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485

PHONE 601-544-1321          FAX 601   -544-3371

PETAL, MS 39465

PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER:  IND6116-IN
INVOICE DATE:  5/23/2018
JOB/ORDER NUMBER:  1871239
ORDER DATE:  5/22/2018
SALESPERSON:
CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-190 | |
| | ITEM # 1 | |
| | COST CODE: 9-1-400 | |
| | DESCRIPTION: | |
| | PROVIDE LABOR AND EQUIPMENT | |
| | TO ASSIST IN THE MECHANICAL | |
| | PORTION OF THE PROJECT. | |
| | T & M FOR WEEK 5/20/18 - 5/26/18 | |
| | TIMESHEETS ATTACHED | |
| IND | AMOUNT | 11,913.00 |

| | |
|---|---|
| Net Invoice: | 11,913.00 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| **Invoice Total:** | 11,913.00 |

App. 00201



INVOICE

Page:        1

# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
## INDUSTRIAL DIVISION
### POST OFFICE BOX 485                      PETAL, MS 39465
PHONE 601-544-1321          FAX 601  -544-3371              PIERCEPCM.COM

**SOLD TO:**

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX  75703

| | |
|---|---|
| INVOICE NUMBER: | IND6139-IN |
| INVOICE DATE: | 6/13/2018 |
| JOB/ORDER NUMBER: | 8712311 |
| ORDER DATE: | 6/12/2018 |
| SALESPERSON: | |
| CUSTOMER NUMBER: | 0000547 |

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| J1711-190 | | | NET 30 | |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | PURCHASE ORDER # J1711-190 | | |
| | ITEM # 1 | | |
| | COST CODE: 9-1-400 | | |
| | DESCRIPTION: | | |
| | PROVIDE LABOR AND EQUIPMENT | | |
| | TO ASSIST IN THE MECHANICAL | | |
| | PORTION OF THE PROJECT. | | |
| | T & M FOR WEEK 6/3/18 - 6/9/18 | | |
| | TIMESHEETS ATTACHED | | |
| IND | AMOUNT | | 63,329.68 |

| | |
|---|---|
| Net Invoice: | 63,329.68 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| **Invoice Total:** | 63,329.68 |

App. 00202

INVOICE



PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
INDUSTRIAL DIVISION

POST OFFICE BOX 485

PHONE 601-544-1321     FAX 601   -544-3371

PETAL, MS 39465
PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6134-IN
INVOICE DATE: 6/6/2018
JOB/ORDER NUMBER: 8712310
ORDER DATE: 6/6/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| J1711-190 | | | NET 30 | |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | PURCHASE ORDER # J1711-190 | | |
| | ITEM # 1 | | |
| | COST CODE: 9-1-400 | | |
| | DESCRIPTION: | | |
| | PROVIDE LABOR AND EQUIPMENT | | |
| | TO ASSIST IN THE MECHANICAL | | |
| | PORTION OF THE PROJECT. | | |
| | T & M FOR WEEK 5/27/18 - 6/26/18 | | |
| | TIMESHEETS ATTACHED | | |
| IND | AMOUNT | | 127,370.16 |

| | | |
|---|---|---|
| Net Invoice: | | 127,370.16 |
| Less Discount: | | 0.00 |
| Freight: | | 0.00 |
| Sales Tax: | | 0.00 |
| Invoice Total: | | 127,370.16 |

INVOICE



PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
INDUSTRIAL DIVISION

POST OFFICE BOX 485      PETAL, MS 39465

PHONE 601 -544-1321    FAX 601 -544-3371     PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6140-IN
INVOICE DATE: 6/13/2018
JOB/ORDER NUMBER: *17709/*
ORDER DATE: 5/22/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| J1711-090 | | | NET 60 | |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-090 | |
| | SCR NO. 016<br>COST CODE 9-1-300<br>ITEM #<br>TARGA REQUESTED THESE TASK<br>BE PERFORMED PRIOR TO<br>PRESSURE TESTING. TASK<br>INCLUDE INSTALLING INSULATOR<br>KITS, ADDING ADDITIONAL 20 INCH<br>TEE IN 20"-IP-INLET (84-1100) LINE,<br>AND ADDING THE 2" BLOW<br>DOWN VENTS.<br>-- SEE DOCUMENT ATTACHED --<br>SCR-016 | |
| IND | 100% COMPLETE THIS PERIOD | 118,224.35 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | SCR NO. 017<br>COST CODE 9-1-300<br>ITEM #<br>TARGA REQUESTED THESE TASK<br>BE PERFORMED FOR THE PLANT<br>OUTAGE PLANNED ON 4/24/18<br>- SEE ATTACHED DOCUMENTS -<br>SCR-017 | |
| IND | 100% COMPLETE THIS PERIOD | 3,255.50 |

Continued.



INVOICE

Page:     2

# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
## INDUSTRIAL DIVISION

POST OFFICE BOX 485                                    PETAL, MS 39465
PHONE 601-544-1321          FAX 601  -544-3371            PIERCEPCM.COM

SOLD TO:                                        INVOICE NUMBER:  IND6140-IN

KPE ENGINEERING, LP                               INVOICE DATE:  6/13/2018
5555 OLD JACKSONVILLE HWY               JOB/ORDER NUMBER:  J77091
TYLER, TX  75703                                     ORDER DATE:  3/22/2018
                                                    SALESPERSON:
                                         CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| IND | 100% COMPLETE TO DATE | 0.00 |
| | LESS: 10% RETAINAGE | |
| IND | AMOUNT | 12,147.99- |

| | |
|---|---|
| Net Invoice: | 109,331.86 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 109,331.86 |



INVOICE

Page:    1

# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
## INDUSTRIAL DIVISION
### POST OFFICE BOX 485                    PETAL, MS 39465
PHONE 601-544-1321         FAX 601   -544-3371              PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

INVOICE NUMBER: IND6152-IN
INVOICE DATE: 6/19/2018
JOB/ORDER NUMBER: J77091
ORDER DATE: 6/13/2018
SALESPERSON:
CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. J1711-090 | SHIP VIA | F.O.B. | TERMS NET 60 | |
|---|---|---|---|---|
| ITEM # | DESCRIPTON | | | AMOUNT |

|  |  |  |
|---|---|---|
|  | PURCHASE ORDER # J1711-090 |  |
|  |  |  |
|  | SCR NO. 010 | |
|  | COST CODE 9-1-300 | |
|  | ITEM # 11 | |
|  | CHANGE IN SCOPE TO INCLUDE | |
|  | NITROGEN TESTING AND | |
|  | HIGHER PRESSURES THAN | |
|  | IN ORIGINAL SCOPE OF WORK | |
|  | SCR-010 | |
| IND | 100% COMPLETE THIS PERIOD | 75,212.00 |
| IND | 100% COMPLETE TO DATE | 0.00 |
|  |  |  |
|  | LESS: 10% RETAINAGE | |
| IND | AMOUNT | 7,521.20- |

| | |
|---|---|
| Net Invoice: | 67,690.80 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 67,690.80 |

App. 00206

INVOICE

Page:        1



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485                                   PETAL, MS 39465
PHONE 601-544-1321          FAX 601   -544-3371            PIERCEPCM.COM

SOLD TO:                                        INVOICE NUMBER:  IND6155-IN

KPE ENGINEERING, LP                               INVOICE DATE:  6/20/2018
5555 OLD JACKSONVILLE HWY                    JOB/ORDER NUMBER:  8712312
TYLER, TX  75703                                     ORDER DATE:  6/20/2018
                                                    SALESPERSON:
                                              CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-190 | |
| | ITEM # 1<br>COST CODE: 9-1-400<br>DESCRIPTION:<br>PROVIDE LABOR AND EQUIPMENT<br>TO ASSIST IN THE MECHANICAL<br>PORTION OF THE PROJECT. | |
| | T & M FOR WEEK 6/10/18 - 6/16/18<br>TIMESHEETS ATTACHED | |
| IND | AMOUNT | 75,551.75 |

| | | |
|---|---|---|
| Net Invoice: | 75,551.75 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 75,551.75 |

App. 00207

INVOICE

Page:      1



PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
INDUSTRIAL DIVISION

POST OFFICE BOX 485                          PETAL, MS 39465
PHONE 601 -544-1321        FAX 601  -544-3371              PIERCEPCM.COM

SOLD TO:                                      INVOICE NUMBER: IND6160-IN

KPE ENGINEERING, LP                              INVOICE DATE: 6/27/2018
5555 OLD JACKSONVILLE HWY                     JOB/ORDER NUMBER: 8712313
TYLER, TX  75703                                  ORDER DATE: 6/26/2018
                                                 SALESPERSON:
                                              CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-190 | |
| | ITEM # 1 | |
| | COST CODE: 9-1-400 | |
| | DESCRIPTION: | |
| | PROVIDE LABOR AND EQUIPMENT | |
| | TO ASSIST IN THE MECHANICAL | |
| | PORTION OF THE PROJECT. | |
| | | |
| | T & M FOR WEEK 6/17/18 - 6/23/18 | |
| | TIMESHEETS ATTACHED | |
| IND | AMOUNT | 89,976.27 |

| | |
|---|---|
| Net Invoice: | 89,976.27 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 89,976.27 |

App. 00208



INVOICE

Page:    1

## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION
POST OFFICE BOX 485

PHONE 601 -544 -1321          FAX 601   -544 -3371

PETAL, MS 39465

PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX  75703

INVOICE NUMBER:  IND6170-IN
INVOICE DATE:  7/3/2018
JOB/ORDER NUMBER:  8712314
ORDER DATE:  7/3/2018
SALESPERSON:
CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | PURCHASE ORDER # J1711-190 | | |
| | ITEM # 1 COST CODE: 9-1-400 DESCRIPTION: PROVIDE LABOR AND EQUIPMENT TO ASSIST IN THE MECHANICAL PORTION OF THE PROJECT. | | |
| | T & M FOR WEEK 6/24/18 - 6/30/18 TIMESHEETS ATTACHED | | |
| IND | AMOUNT | | 28,784.49 |

| | |
|---|---|
| Net Invoice: | 28,784.49 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 28,784.49 |

App. 00209



INVOICE                                                    Page:     1

# PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
## INDUSTRIAL DIVISION
### POST OFFICE BOX 485

PHONE 601-544-1321          FAX 601  -544-3371          PETAL, MS 39465
                                                        PIERCEPCM.COM

SOLD TO:                                    INVOICE NUMBER:  IND6171-IN

KPE ENGINEERING, LP                           INVOICE DATE: 7/6/2018
5555 OLD JACKSONVILLE HWY               JOB/ORDER NUMBER: I77091
TYLER, TX  75703                              ORDER DATE: 7/6/2018
                                              SALESPERSON:
                                       CUSTOMER NUMBER: 0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-090 | |
| | SCR NO. 018 | |
| | COST CODE 9-1-300 | |
| | ITEM # | |
| | HYDRO VAC IN THE OSBL AREA 84 | |
| | IN PREPARATION FOR THE SPLIT | |
| | TEE'S AND HOT TAP'S TO BE | |
| | PERFORMED, AND T&M LABOR, | |
| | EQUIPMENT, AND THIRD PARTY | |
| | COST TO PERFORM 8" | |
| | MODIFICATIONS IN THE GRAND | |
| | PRIX AREA AS REQUESTED BY | |
| | TARGA | |
| | SCR-018 | |
| IND | 100% COMPLETE THIS PERIOD | 214,783.58 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | LESS: 10% RETAINAGE | |
| IND | AMOUNT | 21,478.36- |

|  |  |
|---|---|
| Net Invoice: | 193,305.22 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 193,305.22 |

App. 00210

App. 00211





INVOICE

Page:    1

## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

### INDUSTRIAL DIVISION

POST OFFICE BOX 485                    PETAL, MS 39465

PHONE 601 -544-1321          FAX 601  -544-3371          PIERCEPCM.COM

SOLD TO:                                          INVOICE NUMBER:  IND6176-IN

KPE ENGINEERING, LP                           INVOICE DATE:  7/11/2018
5555 OLD JACKSONVILLE HWY              JOB/ORDER NUMBER:  8712315
TYLER, TX  75703                                  ORDER DATE:  7/10/2018
                                                     SALESPERSON:
                                           CUSTOMER NUMBER:  0000547

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| J1711-190 | | | NET 30 | |
| ITEM # | DESCRIPTON | | | AMOUNT |

PURCHASE ORDER # J1711-190

ITEM # 1
COST CODE: 9-I-400
DESCRIPTION:
PROVIDE LABOR AND EQUIPMENT
TO ASSIST IN THE MECHANICAL
PORTION OF THE PROJECT.

T & M FOR WEEK 7/01/18 - 7/07/18
TIMESHEETS ATTACHED

IND                        AMOUNT                                        53,104.33

| | | |
|---|---|---|
| Net Invoice: | 53,104.33 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 53,104.33 |

INVOICE

Page: 2



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.
### INDUSTRIAL DIVISION

POST OFFICE BOX 485        PETAL, MS 39465

PHONE 601-544-1321     FAX 601-544-3371     PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

| | |
|---|---|
| INVOICE NUMBER: | IND6177-IN |
| INVOICE DATE: | 7/11/2018 |
| JOB/ORDER NUMBER: | 7709112 |
| ORDER DATE: | 7/11/2018 |
| SALESPERSON: | |
| CUSTOMER NUMBER: | 0000547 |

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | SCR NO. 17<br>COST CODE 9-1-300<br>ITEM # 20<br>TARGA REQUESTED THESE TASK<br>BE PERFORMED FOR THE PLANT<br>OUTAGE PLANNER ON 4/24/18<br>SCR-017 | |
| IND | 10% RETAINAGE | 325.55 |
| IND | 100% COMPLETE TO DATE | 0.00 |
| | SCR NO. 018<br>COST CODE 9-1-300<br>ITEM #<br>HYDRO VAC IN THE OSBL AREA IR<br>IN PREPARATION FOR THE SPLIT<br>TEE'S AND HOT TAP'S TO BE<br>PERFORMED, AND T&M LABOR,<br>EQUIPMENT, AND THIRD PARTY<br>COST TO PERFORM 8"<br>MODIFICATIONS IN THE GRAND<br>PRIX AREA AS REQUESTED BY<br>TARGA<br>SCR-018 | |
| IND | 10% RETAINAGE | 21,478.36 |
| IND | 100% COMPLETE TO DATE | 0.00 |

| | |
|---|---|
| Net Invoice: | 41,147.55 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| **Invoice Total:** | 41,147.55 |

App. 00212

INVICE



PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

INDUSTRIAL DIVISION

POST OFFICE BOX 485                    PETAL, MS 39465

PHONE 601 -544 -1321        FAX 601    -544 -3371                    PIERCEPCM.COM

**SOLD TO:**

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

| | |
|---|---|
| INVOICE NUMBER: | IND6177-IN |
| INVOICE DATE: | 7/11/2018 |
| JOB/ORDER NUMBER: | 7709112 |
| ORDER DATE: | 7/11/2018 |
| SALESPERSON: | |
| CUSTOMER NUMBER: | 0000547 |

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-090 | | | NET 60 |

| ITEM # | DESCRIPTON | | AMOUNT |
|---|---|---|---|
| | PURCHASE ORDER # J1711-090 | | |
| | SCR NO. 010 | | |
| | COST CODE 9-1-300 | | |
| | ITEM # 11 | | |
| | CHANGE IN SCOPE TO INCLUDE | | |
| | NITROGEN TESTING AND | | |
| | HIGHER PRESSURES THAN | | |
| | IN ORIGINAL SCOPE OF WORK | | |
| | SCR-010 | | |
| IND | | 10% RETAINAGE | 7,521.20 |
| IND | | 100% COMPLETE TO DATE | 0.00 |
| | | | |
| | SCR NO. 016 | | |
| | COST CODE 9-1-300 | | |
| | ITEM # 19 | | |
| | TARGA REQUESTED THESE TASK | | |
| | BE PERFORMED PRIOR TO | | |
| | PRESSURE TESTING. TASK | | |
| | INCLUDE INSTALLING INSULATOR | | |
| | KITS, ADDING ADDITIONAL 20 INCH | | |
| | TEE IN 20"-IP-INLET (84-1100) LINE, | | |
| | AND ADDING THE 2" BLOW | | |
| | DOWN VENTS. | | |
| | SCR-016 | | |
| IND | | 10% RETAINAGE | 11,822.44 |
| IND | | 100% COMPLETE TO DATE | 0.00 |

Continued

App. 00213

INVOICE



## PIERCE CONSTRUCTION AND MAINTENANCE CO., INC.

### INDUSTRIAL DIVISION

POST OFFICE BOX 485      PETAL, MS 39465

PHONE 601-544-1321     FAX 601 -544-3371      PIERCEPCM.COM

SOLD TO:

KPE ENGINEERING, LP
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

| | |
|---|---|
| INVOICE NUMBER: | IND6178-IN |
| INVOICE DATE: | 7/11/2018 |
| JOB/ORDER NUMBER: | 8712316 |
| ORDER DATE: | 7/11/2018 |
| SALESPERSON: | |
| CUSTOMER NUMBER: | 0000547 |

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|
| J1711-190 | | | NET 30 |

| ITEM # | DESCRIPTON | AMOUNT |
|---|---|---|
| | PURCHASE ORDER # J1711-190 | |
| | ITEM # 1<br>COST CODE: 9-1-400<br>DESCRIPTION:<br>PROVIDE LABOR AND EQUIPMENT<br>TO ASSIST IN THE MECHANICAL<br>PORTION OF THE PROJECT. | |
| IND | T & M FOR 7/08/18 - 7/10/18<br>TIMESHEETS ATTACHED<br>AMOUNT | 19,030.00 |

| | |
|---|---|
| Net Invoice: | 19,030.00 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 19,030.00 |

App. 00214

# EXHIBIT "2"

App. 00215

## CAUSE NO. CV54856

| | | |
|---|---|---|
| HANCOCK MECHANICAL, LLC d/b/a | § | IN THE DISTRICT COURT |
| HANCOCK MECHANICAL WELDING | § | |
| & FABRICATION | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | 238TH JUDICIAL DISTRICT |
| | § | |
| KP ENGINEERING, LP, and | § | |
| TARGA PIPELINE MID-CONTINENT | § | |
| WESTTEX LLC | § | |
| | § | |
| *Defendants.* | § | MIDLAND COUNTY, TEXAS |

## AFFIDAVIT OF CARA D. KENNEMER IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

**BEFORE ME,** the undersigned authority on this day personally appeared **Cara D. Kennemer**, who being duly sworn states on oath that:

1.      "My name is Cara D. Kennemer. I am over the age of twenty-one (21) years of age, of sound mind, have never been convicted of a felony, and am fully competent to make and execute this Affidavit. I have personal knowledge of the facts stated in this Affidavit which are all true and correct.

2.      I am licensed to practice law by the Supreme Court of the State of Texas. I am currently practicing law in Tarrant County, Texas and am a partner in the law firm of the Underwood Law Firm ("**Underwood**"). I handle cases in state and federal courts throughout the State of Texas, including Midland County.

1

3.      Underwood has been retained by **Pierce Construction and Maintenance Co., Inc.** (hereinafter **"Pierce"**) to represent Pierce, and have been specifically retained to prosecute Pierce's claims against KP Engineering, LP ("KPE").

4.      In connection with the representation of Pierce in this cause, Pierce agreed to pay Underwood a non-contingent attorney fee based upon customary hourly rates charged by Underwood for such services. Since Underwood began representation of Pierce in this cause, attorneys in Underwood and a legal assistant working under those attorneys' supervision have spent approximately 20 hours performing the following services: receiving and analyzing the file; review of invoices; preparation of Pierce's pleadings, and Motion for Summary Judgment; obtaining execution of Affidavits and filing pleadings with the Court; and general correspondence concerning this case. It is anticipated that an additional 5 hours will be expended in preparation and attendance at a Court appearance regarding the Motion for Summary Judgment, if necessary.

5.      Considering the reasonable attorneys' fees in this case, I have considered the time and labor involved, difficulty of the issues presented, my experience, reputation and ability in providing the services described herein, the skills requisite to properly conduct this case, customary charges of the bar and awards in similar cases, and the amount of controversy.

6.      Underwood is engaged in a general practice with an emphasis in commercial and business litigation and construction. It has been my experience that the time detailed above and the hourly rates to be charged are a reasonable, necessary, and fair rate for the type of services provided in this case.

7.      Based upon my knowledge and experience for similar litigation in Texas courts, in the sum of $5,500.00 is a reasonable and necessary attorneys' fee and expenses to be incurred for

the services of Underwood in prosecuting this case from prior to the filing of Pierce's third-party claim through summary judgment.

8.     In the event this case is appealed, the following are reasonable and necessary attorneys' fees and expenses for the representation of Pierce on appeal:

A.     the sum of $10,000.00 for legal services rendered in the event of an appeal to the Texas Court of Appeals;

B.     the sum of $5,000.00 for legal services rendered in the event a petition for review is filed in the Texas Supreme Court; and

C.     the sum of $5,000.00 for legal services rendered in the event a petition for review is granted by the Texas Supreme Court."

SIGNED this 25th day of June 2019.

_____
CARA D. KENNEMER, Affiant

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said **CARA D. KENNEMER** on this the 25th day of June 2019.

LINDA PEREZ
Notary Public, State of Texas
Notary ID #12957980-1
My Commission Expires 10-02-2021

Printed or stamped Name of Notary

_____
Notary Public, State of Texas

3

# EXHIBIT A-7

App. 00219

No. CV54856

| | |
|---|---|
| **Credos Mechanical, LLC d/b/a Credos Mechanical Welding & Fabrication** | **In the District Court** |
| **vs.** | **238TH Judicial District** |
| **KP Engineering, LP, and Targa Pipeline Mid-Continent WestTex, LLC** | **Midland County, Texas** |

### Credos Industrial Supplies & Rentals, d/b/a Credos Fabrications' Motion for Partial Summary Judgment Against KPE

Credos Industrial Supplies & Rentals, LLC, d/b/a Credos Fabrications ("Credos"), files this motion seeking a partial summary judgment against KP Engineering, LP ("KPE") on its breach of contract claim, and would show the Court:

### I. Introduction

1.    Pursuant to written contracts and purchase orders, Credos performed labor and furnished materials for the construction of a cryogenic gas processing and compression plant referred to as the Johnson Plant, owed by Defendant, Targa Pipeline Mid-Continent West-Tex LLC. KPE failed to pay Credos timely. In total, KPE has failed to pay Credos $930,507.76 for labor and materials Credos provided to KPE.

2.    Credos filed suit against KPE on November 14, 2018, asserting claims for breach of Contract and quantum meruit. Based on the evidence and arguments contained in this motion, Credos is entitled to summary judgment against KPE on its breach of contract claim, in whole or in part.

1

## II. Summary Judgement Evidence Relied Upon

3.      Credos relies upon the following evidence to support its motion:  Exhibit 1, declaration of Cecil Scottie Johnson with attached exhibits.

## III. Argument and Authorities

4.      Under Rule 166a of the Texas Rules of Civil Procedure, traditional summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues set out in its motion. The non-movant must expressly present to the trial court any reasons to avoid the movant's entitlement to summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

5.      There are no genuine issues of material fact on Credos' breach of contract claim and damages. The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.).

6.      The contracts and purchase order contracts attached hereto establish the agreement of the parties regarding Credos' work to be performed for KPE. Credos was to perform work and occasionally supply necessary materials on the new construction at the Johnson Plant. KPE was to pay Credos on and a time and materials basis, ("T&M Basis") Exhibit x, pg. x. KPE was to pay from the invoices.

7.      Credos timely performed the obligations under the agreement with KPE, but KPE failed to timely pay Credos for the work represented by the invoices attached. KPE owes Credos the sum of $930,507.76.

8.      Texas law permits Credos to recover its reasonable attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(8). Because KPE has failed to honor its contractual obligations, Credos has been damaged and required to retain and pay counsel to prosecute

2

App. 00221

this lawsuit and to file this motion for partial summary judgment. Credos prays that this Court award Credos attorney's fees in an amount to be established at a separate hearing.

Wherefore, Credos prays that this motion be heard, and that the Court enter such orders as may be just and necessary to grant the relief requested herein.

Respectfully submitted,

Craig M. Daugherty
Texas Bar No. 05404300
100 Independence Pl, Ste 300
Tyler, Texas 75703
Tel. (903) 509-4900
Fax. (903) 385-3215
Email:  craigd@beardandharris.com

Attorney for Credos Fabrications

## Certificate of Service

I hereby certify that a true and correct copy of this pleading has been sent to all attorneys and/or parties of record in the above styled and numbered cause in accordance with the Texas Rules of Civil Procedure on this 27th day of June, 2019.

3

App. 00222

## UNSWORN DECLARATION

My name is Cecil Scottie Johnson, my date of birth is _02/16/1967_, and my address is 277 CR 440, Quitman, MS 39355. Pursuant to Texas CPRC §132.001 I declare under penalty of perjury that the facts set out herein are within my personal knowledge and are true and correct.

1. I am the owner of Credos Industrial Supplies & Rentals, LLC, dba Credos Fabrications, ("Claimant").

2. Pursuant to written contracts and purchase order contracts Claimant furnished labor, materials, and services to KP Engineering, LP ("KPE") for improvements to the project generally known as the Johnson Gas Plant construction project. The documents attached as Exhibit 1 are the contracts and purchase order contracts entered into between Claimant and KPE.

3. Claimant furnished labor, materials, and services to KPE, for which Claimant remains unpaid, from July 2, 2018 through August 5, 2018. The details of the labor, materials, and services Claimant provided to KPE are contained and more fully described in the invoices attached hereto as Exhibit 2. Exhibit 2 contains an accurate account and Claimant's systematic record of all of the charges Claimant made to KPE for this project for which Claimant remains unpaid.

4. KPE failed to pay to Claimant the amount of $930,507.76 ("Claim Amount").

5. The Claim Amount represents the unpaid contract price due Claimant, or, in the alternative, is the reasonable value of the unpaid portion of Claimant's labor furnished, which are described in the attached invoices.

6. I am familiar with the manner in which Claimant's records are created and maintained by virtue of my duties and responsibilities. Attached Exhibits 1 and 2 are exact duplicates of original records. These records were made at or near the time of each act, event, condition, or opinion set forth. It is the regular practice of Claimant to make this type of record at or near the time of each act, event, condition, or opinion set forth in the record. The records were made by, or from information transmitted by, persons with knowledge of

App. 00223

the matters set forth. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

Executed in Quitman, MS on the 27th day of June, 2019.

Cecil Scottie Johnson

**SUBCONTRACT AGREEMENT**

**J-1711-MEC-001**
**Mechanical Installation**
**Johnson Cryo**
**Targa**
**Midland, TX**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| ARTICLE 1 | CONTRACT DOCUMENTS | 1 |
| ARTICLE 2 | THE WORK | 1 |
| ARTICLE 3 | TIME OF PERFORMANCE | 1 |
| ARTICLE 4 | THE SUBCONTRACT PRICE | 1 |
| ARTICLE 5 | PAYMENTS | 1 |
| ARTICLE 6 | INDEMNIFICATION | 1 |
| ARTICLE 7 | INSURANCE | 1 |
| ARTICLE 8 | BONDS | 1 |
| ARTICLE 9 | CHANGES | 1 |
| ARTICLE 10 | DAMAGE TO OTHER WORK | 1 |
| ARTICLE 11 | CLEANUP | 1 |
| ARTICLE 12 | SAFETY | 1 |
| ARTICLE 13 | QUALITY | 1 |
| ARTICLE 14 | ASSIGNMENT | 1 |
| ARTICLE 15 | WARRANTY | 1 |
| ARTICLE 16 | BACKCHARGE | 1 |
| ARTICLE 17 | TERMINATION | 1 |
| ARTICLE 18 | DISPUTE RESOLUTION | 1 |
| ARTICLE 19 | FORCE MAJEURE | 1 |
| ARTICLE 20 | CONFIDENTIALITY | 1 |
| ARTICLE 21 | GOVERNING LAW | 1 |
| ARTICLE 22 | MISCELLANEOUS | 1 |
| ARTICLE 23 | ATTORNEYS FEES | 1 |
| ARTICLE 24 | INTERPRETATION | 1 |

**Exhibit 1**

## SUBCONTRACT AGREEMENT

**J-1711-MEC-001**
**Mechanical Installation**
**Johnson Cryo**
**Targa**
**Midland, TX**

THIS AGREEMENT made this 19th day of March , by and between KP Engineering LP, a Texas limited partnership whose principal address is 5555 Old Jacksonville Hwy, Tyler, Texas 75703, hereinafter called "Contractor" and *Credos Fabrication* whose principal address *277 CR 440 Quitman TXs 75355* ; hereinafter called "Subcontractor."

PROJECT: Mechanical Installation as defined herein for KP Engineering LP job number J-1711 for a new Johnson Cryo, for Targa, located in Midland, TX.

SUBCONTRACT AGREEMENT     GENERAL TERMS AND CONDITIONS          J-1711-MEC-001

### ARTICLE 1     CONTRACT DOCUMENTS

**1.1**     The contract documents for this subcontract consist of this Agreement ("Agreement") and any exhibits named herein (including all general and special conditions, plans, drawings, and specifications issued prior to the execution of this Agreement), along with all modifications to this Agreement to which both parties agree in writing.

**1.2**     This Agreement between Contractor and Subcontractor includes the following documents that are incorporated herein by reference.

- .a     Subcontract Agreement
- .b     General Terms & Conditions
- .c     Exhibit A, Scope of Work, Rev. 0 dated January 22, 2018. **Not Used.**
- .d     Exhibit B, Insurance Requirements and its Attachment A, both Rev 0-TRG dated May 2, 2016.
- .e     Exhibit C, Project Rules, Rev. 0-TRG dated May 2, 2016.
- .f     Exhibit D, Technical Documents, Rev. 0 dated January 22, 2018. **Not Used.**
- .g     Exhibit E, Labor Relations, Rev. 0 dated February 12, 2014.
- .h     Exhibit F, Project Schedule, Rev. 0 dated May 6, 2016. **Not Used.**
- .i     Exhibit G, Performance Bonds, Rev. 0-TRG dated May 6, 2016. **Not Used.**
- .j     Exhibit H, Special Provisions, Rev. 1-TRG dated Jan. 22, 2018.
- .k     Exhibit I, Safety Requirements, Rev. 0-TRG dated Jan. 22, 2018.
- .l     Exhibit J, Quality Standards, Rev. 0 dated March 24, 2015.
- .m     Exhibit K, Subcontractor's Waiver and Releases, Rev. 0-TRG dated May 2, 2016. **Not Used.**
- .n     Exhibit L, Information and Change Requests, Rev. Qty-0 dated April 26, 2017. **Not Used.**
- .o     Exhibit M, Reporting and Documentation, Rev. Qty-0 dated February 12, 2014. **Not Used.**
- .p     Exhibit N, Mechanical Completion, Rev. 0-TRG dated May 8, 2016. **Not Used.**
- .q     Exhibit O, Subcontractor's Proposal and Bid Form, Rev. 0 dated Jan. 23, 2018. **Not Used.**
- .r     Exhibit P, Pre-award Notes and Documents, Rev. 0 dated Jan. 23, 2018. **Not Used.**
- .s     Exhibit Q, Post-award Documents, Rev. 0 dated August 19, 2010. **Not Used.**

**1.3**     Subcontractor acknowledges that he has read the contract documents and is familiar with each and every part thereof affecting his Subcontract Work. Subcontractor by examination has satisfied himself as to the nature and location of the Work; the character, quantity, and kinds of materials necessary; the adequacy of any surface or subsurface conditions necessary to assure proper installation of Subcontractor's Work; the kinds and quantity of equipment needed; and other local conditions or matters affecting compliance with the contract documents. Further, Subcontractor is familiar with the respective rights, powers, benefits and liabilities of the Subcontractor, Contractor and the Owner under the Subcontract documents and hereby agrees to comply with and perform all provisions thereof which are applicable to the Subcontract Work.

**1.4**     The Subcontractor agrees to be bound to the Contractor under this Agreement according to the terms and conditions and other documents of this Agreement. The Subcontractor shall assume and perform all of the obligations and responsibilities of this Agreement, which pertain or relate to the scope of work in this Subcontract as described in Article 2, below, and the Exhibits of this Agreement.

**1.5**     Subcontractor shall ascertain and comply with all applicable laws and applicable governmental authorizations for which it is responsible pursuant to the Work described herein, including without limitation all immigration laws, the ACA and Section 218C of the Fair Labor Standards Act. Subcontractor agrees to indemnify, defend, and hold harmless Owner and Contractor and their indemnitees from and against any and all fines, penalties, related costs and expenses (including reasonable attorneys' fees, costs and expenses) attributable to any failure of Subcontractor (or any lower tier Subcontractor) to comply with such laws and such governmental authorizations in connection with the performance of the Work.

### ARTICLE 2     THE WORK

**2.1**     Contractor has entered into an Engineering, Procurement and Construction Agreement with

Targa Pipeline Mid-Continent, LLC ("Owner"), dated January 17, 2017 (the "EPC Agreement").

**2.2**     The Subcontractor shall furnish for the consideration herein mentioned all labor, material, supervision, equipment, hoisting, temporary storage, insurance, taxes, fees and permits necessary to complete the following work in accordance with the terms and conditions of this contract and in a good and workmanlike manner for the, **Mechanical Installation as identified by Request For Proposal J-1711-MEC-001, Mechanical Installation, for a new Johnson Cryo (the "Project") in the Targa facility located in Midland, TX (the "Site" of "Jobsite") in strict accordance with this Subcontract Agreement, Drawings, Specifications, Exhibits, and Addenda (the "Work").**

**2.3**     The Subcontractor agrees that he is an independent contractor under this Agreement. The Subcontractor is solely responsible for, and has control over, all construction means, methods, techniques, sequences, procedures, and coordination of all portions of the Subcontract Work, unless the Contractor shall give specific written instructions concerning these matters. Further, the Subcontractor is fully responsible for, and has control over, all construction means, methods, techniques, sequences, procedures and coordination of the Subcontract Work related to the safety of the Subcontractor's employees and any other persons working in the area of the Subcontract Work.

**2.4**     Contractor acknowledges and agrees that Subcontractor intends to have portions of the Work accomplished by lower tier subcontractors. Subcontractor shall require the lower tier subcontractors to perform their work in conformity with the provision of this Agreement. No contractual relationship shall exist between Contractor and any lower tiered subcontractor with respect to the Work to be performed pursuant to this Agreement, and no lower tiered subcontractor is intended to be a third-party beneficiary of this Agreement. Subcontractor agrees that it shall be fully responsible to Contractor for the acts and omissions of lower tier subcontractors and vendors and of persons directly or indirectly employed by them, as it is for the acts or omissions of persons directly employed by Subcontractor.

**2.5**     Nothing contained in this Agreement shall obligate Contractor to pay, or to see to the payment of, any lower tier subcontractor or vendor. Entry into any lower tier subcontracts shall not relieve Subcontractor of any of its obligations to perform the

Work in accordance with this Agreement.

**2.6**     No contractual relationship shall exist between Owner and Subcontractor, or any lower tier subcontractors and vendors, with respect to the Work to be performed pursuant to this Agreement. Subcontractor, lower-tier subcontractors, or vendors shall not communicate directly with Owner on any matters relating to this Agreement. All communication to the Owner in regards to the Work pursuant to this Agreement shall be between Contractor and Owner; provided that, at the request of Contractor, Subcontractor shall make available a representative with whom Owner may discuss, in the presence of Contractor, questions regarding the progress of the Work being performed by Subcontractor.

**2.7**     Owner is not intended to be a third-party beneficiary of this Agreement, except to the extent set forth in Articles 6, 14 and 15 herein.

*ARTICLE 3     THE SUBCONTRACT PRICE*

**3.1**     In consideration of the faithful performance of the covenants and agreements herein to the full satisfaction and acceptance of the Owner and Contractor, Contractor agrees to pay, or cause to be paid Subcontractor on a **T&M Basis.**

*ARTICLE 4     PAYMENTS*

**4.1**     Subcontractor shall invoice Contractor by 9:00 AM Wednesday the following week after commencement of the Work...

**4.2**     Subcontractor shall submit such invoices for review and approval to KP Engineering LP Site Construction Manager ("KP Manager"). After the Site ~~SS~~ Construction Manager Review and approval, ~~final approval and~~ Subcontractor shall submit the Invoice for payment to **KP Engineering LP, Accounts Payable, 5555 Old Jacksonville Hwy, Tyler, Texas 75703.** Terms of payment are net ~~sixty~~ (30) days from Contractor's receipt of each approved invoice. ~~SS~~

**4.3**     Subcontractor shall provide to Contractor a certificate that 1) the Work is progressing as set forth in the most recent Project Schedule, 2) the Work described in the Invoice is in accordance with the terms of this Agreement, 3) that Subcontractor is entitled to payment of the amount invoiced, 4) Subcontractor has paid all lower tier subcontractors and vendors for Work previously invoiced in accordance with the Law and this Agreement, and the Work (or any portion thereof) described in the Invoice, 5) all previous invoices are free and clear of all Subcontractor Liens, 6) Subcontractor has supplied the lien waivers for Subcontractor and all

SUBCONTRACT AGREEMENT     GENERAL TERMS AND CONDITIONS                    J-1711-MEC-001

Major lower tier subcontractors for which payment has been previously or is currently included within a Subcontractor Invoice, and 7) each representation and warranty made by Subcontractor were true and current when made and remain true and correct on the date of Invoice. Subcontractor shall attach to each certificate delivered waivers as required in Article 5.3 above.

**4.4**     Subcontractor shall promptly pay, in accordance with the Law and the terms and conditions set forth in the respective subcontract, each lower tier subcontractor or vendor the amount to which they are entitled. Subcontractor, by an appropriate agreement with each lower tier subcontractor or vendor, shall require each lower tier subcontractor or vendor to make timely payments to its laborers, suppliers and lower tier subcontractors in a similar manner. Subcontractor shall not enter into any agreement for payment terms to lower subcontractors or vendors that violate this Agreement.

**4.5**     All covenants and obligations of Contractor herein are performable in Smith County, Texas and specifically all sums of money payable to Subcontractor are payable in Smith County, Texas.

**4.6**     Progress payments or final payment may be withheld by Contractor on account of defective Work not remedied, claims filed, reasonable evidence indicating the probability of the filing of claims or reasonable doubt that the Subcontract can be completed for the balance of the Subcontract amounts then unpaid. Contractor may offset against any sums due Subcontractor hereunder the amount of any liquidated or unliquidated obligations of Subcontractor to Contractor, whether or not arising out of this Subcontract.

**4.7**     Contractor shall have the right to inspect the Work and audit Subcontractor's progress and quantity reporting systems and documents in accordance with the provisions of this Agreement, in order to verify the progress made by Subcontractor for the purposes of payment.

### ARTICLE 5     INDEMNIFICATION

**5.1**     INDEMNIFICATION BY SUBCONTRACTOR. SUBCONTRACTOR WILL INDEMNIFY, DEFEND, AND HOLD HARMLESS CONTRACTOR, ITS DIRECTORS, OFFICERS, AND EMPLOYEES, AND ITS AFFILIATES FROM AND AGAINST ANY CLAIMS BROUGHT AGAINST OWNER OR ITS AFFILIATES FOR PERSONAL INJURY, DEATH, OR PROPERTY DAMAGE ARISING OUT OF OR AS A RESULT OF

SUBCONTRACTOR'S NEGLIGENCE IN THE PERFORMANCE OF THE WORK UNDER THIS AGREEMENT.

**5.2**     INDEMNIFICATION BY CONTRACTOR. CONTRACTOR WILL INDEMNIFY, DEFEND, AND HOLD HARMLESS SUBCONTRACTOR, ITS DIRECTORS, OFFICERS, AND EMPLOYEES, AND ITS AFFILIATES FROM AND AGAINST ANY CLAIMS BROUGHT AGAINST SUBCONTRACTOR OR ITS AFFILIATES FOR PERSONAL INJURY, DEATH, OR PROPERTY DAMAGE ARISING OUT OF OR AS A RESULT OF CONTRACTOR'S NEGLIGENCE.

**5.3**     MUTUAL INDEMNIFICATION. IN THE EVENT ANY CLAIMS ARISE AS THE RESULT OF THE CONCURRENT NEGLIGENCE OF CONTRACTOR AND SUBCONTRACTOR, EACH PARTY WILL BE RESPONSIBLE FOR AND INDEMNIFY THE OTHER PARTY UNDER SECTIONS 6.1 AND 6.2, TO THE EXTENT OF THEIR RESPECTIVE NEGLIGENCE.

**5.4**     The obligations of the Parties described in this Article 6 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable under worker's or workmen's compensation acts, disability benefits, or other employee benefit acts.

**5.5**     No statute, rule, or regulation that precludes an injured party from bringing an action against a fellow employee or employer shall preclude either Party from seeking and obtaining a judicial determination of the fault or negligence of such persons for purposes of Article 6.

**5.6**     Each Party shall promptly notify the other in writing of any claims from any third party that may be covered by the indemnities set forth in this Article 6. Without limiting the generality of the foregoing, Contractor shall notify Subcontractor in writing as soon as Contractor shall receive notice of any claims of infringement of patents or other proprietary rights occurring in connection with Subcontractor's performance of the Work. In turn, Subcontractor shall timely notify Contractor in writing of any claims which Subcontractor may receive alleging infringement of patents or other proprietary rights which may affect Subcontractor's performance of the Work, operation of the Facility, or subject Contractor or Owner to liability.

### ARTICLE 6     INSURANCE

**6.1**     Prior to starting Work the Subcontractor shall procure and maintain in force insurance in

SUBCONTRACT AGREEMENT    GENERAL TERMS AND CONDITIONS    J-1711-MEC-001

complete accordance with Exhibit "B," Insurance Requirements.

### ARTICLE 7    BONDS

**7.1**    If required by the Contractor, a Performance Bond and a Payment Bond in a form satisfactory to the Contractor and in accordance with the requirements of Exhibit "G," Performance Bonds, shall be furnished in the full amount of this Agreement. These bonds will be furnished by an insurance company on the list of Acceptable Sureties by the Department of the Treasury within the limits stated thereon.

### ARTICLE 8    DAMAGE TO OTHER WORK

**8.1**    In carrying out the Work, Subcontractor shall take necessary precautions to protect the finished work of other trades from damage caused by Subcontractor's operations and Subcontractor shall repair and/or replace to Contractor's satisfaction and on Contractor's demand all damage caused by Subcontractor's operation at no expense to the Contractor.

### ARTICLE 9    CLEANUP

**9.1**    Subcontractor shall at all times and on a daily basis keep the premises free from accumulations of waste material, debris, or rubbish caused by Subcontractor's employees or Work, and at the direction of the Contractor, Subcontractor shall remove all the waste material, debris and rubbish from and about the Work area and all Subcontractor's tools, equipment, waste and surplus materials and shall leave Subcontractor's Work clean. In case of dispute, the Contractor may remove the rubbish and charge the cost to the Subcontractor.

### ARTICLE 10    SAFETY

**10.1**    Subcontractor shall take all reasonable safety precautions with respect to Subcontractor's Work, shall comply with all safety measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations and orders of any government agency or political subdivision for the safety of any persons or property. Subcontractor agrees to establish and maintain a job site safety program in accordance and in compliance with the requirements of Exhibit "I," Safety Regulations Rules.

**10.2**    Subcontractor shall submit to Contractor, as soon as reasonably possible, but in no event later than twenty-four (24) hours after any incident copies of all accident/incident reports (including "near miss" incidents wherein no individual was injured or property was damaged) arising out of any injuries/"near miss" incidents to Subcontractor's employees or those of any firm or individual to whom Subcontractor may have subcontracted Work or any property damage arising, alleged to have arisen, or "near miss" incidents on account of any Work done by Subcontractor under this Agreement.

**10.3**    Subcontractor agrees that, prior to performing any Work activities pursuant to this Agreement, it will evaluate the safety of the work in place and the working conditions in the area in which its employees and subcontractors will work and will notify Contractor in writing of any unsafe conditions or defective work in place and will further prevent its personnel and subcontractors from entering into any such area or performing any Work in or around any such defective work. Failure of Subcontractor to notify Contractor of any unsafe condition or defective work prior to beginning Work shall conclusively establish Subcontractor's acceptance of the work in place and safety of the working conditions related to its Work.

### ARTICLE 11    QUALITY

**11.1**    Subcontractor shall establish a Jobsite quality assurance program with quality assurance procedures for all aspects of the Work which satisfy, at a minimum, the requirements set forth in the Contractor's Quality Assurance Guidelines as set forth in Exhibit "J," Quality Standards.

### ARTICLE 12    ASSIGNMENT

**12.1**    Subcontractor shall not assign this Subcontract or any amounts due or to become due hereunder to any third party without prior written consent of the Contractor and shall not subcontract the whole or any portion of this Subcontract without prior written consent of the Contractor.

**12.2**    This Agreement may be assigned to Owner and its successors or assigns without further consent of Subcontractor.

**12.3**    Further, in the event Contractor files bankruptcy, Subcontractor agrees to enter into a new contract directly with Owner on the same terms and conditions as this Agreement if any trustee in bankruptcy for Contractor rejects this Agreement, or Subcontractor terminates the Agreement as a result of the bankruptcy of Contractor.

### ARTICLE 13    WARRANTY

**13.1**    Subcontractor represents and warrants that it is and will be at all times fully qualified and capable of performing the Work to complete the Work in accordance with the terms of this Agreement.

**Exhibit 1**

Subcontractor warrants that all services provided, including lower tier subcontractors and vendors, and procedures followed by Subcontractor hereunder shall be in accordance with the manufacturers' or vendors' warranty requirements, prudent industry practice, in accordance with all Laws, and all requirements of this Agreement. Subcontractor further warrants that the Work shall be constructed to meet the requirements of this Agreement so that the Work will operate in accordance with generally accepted industry practices and the technical requirements of this Agreement (referred to individually as "Warranty" or collectively as "Warranties").

**13.2**     Subcontractor warrants that all materials furnished and incorporated by it in the Work shall be new, unless otherwise specified, and shall conform in all respects with applicable codes, standards, Laws, Governmental Authorizations, and all other requirements of this Agreement, and shall, during the Warranty Period, be free from defects in design, materials, and workmanship. All Work under this Agreement shall be performed in accordance with the contract documents and in a good and workmanlike manner. All work performed, and materials furnished by Subcontractor must be satisfactory to the Contractor and Owner and the warranties contained in this Agreement shall be in addition to and not a limitation of any other warranty or remedies provided by law or contract documents.

**13.3**     The "*Warranty Period*" shall be for a period of 12 months following Mechanical Completion of the Work. With respect to any Warranty Work performed, the Warranty Period for such Work shall be extended for an additional one (1) year from the date of the completion of such Warranty Work.

**13.4**     To the extent Subcontractor supplies any specialty items or fabricated materials or equipment hereunder which are purchased on Owner's behalf from third-parties, Subcontractor shall secure or cause its subcontractors to secure, for the benefit of Owner, guarantees or warranties from such third-party vendors, subcontractors and/or suppliers. Such third-party guarantees or warranties shall be, at a minimum, twelve (12) months from date of startup or eighteen (18) months from shipment, whichever occurs earlier. SUBCONTRACTOR WILL USE ITS BEST EFFORTS SHORT OF LITIGATION TO ENFORCE SUCH GUARANTEES OR WARRANTIES, BUT SUBCONTRACTOR SHALL NOT ITSELF BE LIABLE AS A GUARANTOR THEREOF.

**13.5**     The Warranties made in this Agreement shall be for the benefit of Contractor and Owner and its successors and assigns and the respective successors and assigns of any of them and are fully transferable and assignable.

## ARTICLE 14    BACKCHARGE

**14.1**     Should the Subcontractor fail at any time to supply a sufficient number of properly skilled workmen and/or sufficient materials and equipment of the proper quality, or fail in any respect to prosecute the Work with promptness and diligence, or fail to promptly correct defective Work, or fail in the performance of any of the agreements contained herein, the Contractor may, in its sole discretion and without notice, provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due to the Subcontractor under this Agreement. If no money or insufficient money is due to Subcontractor at the time of the operation of this paragraph, Subcontractor shall be directly liable to Contractor or the loss and damages hereinabove described.

## ARTICLE 15    TERMINATION/SUSPENSION

**15.1**     If the Subcontractor at any time shall refuse or neglect to supply sufficient properly skilled workmen, or materials or equipment of the proper quality and quantity, or fail in any respect to prosecute Subcontractor's Work with promptness and diligence, or cause by any action or omission the stoppage or interference with the work of the Contractor or other subcontractors, or fail in performance of any of the covenants herein contained, or fail to pay suppliers, the Contractor may, at its option and discretion, terminate the Subcontractor's employment by delivering written notice of termination to the Subcontractor. Thereafter, the Contractor may take possession of the Work materials, tools, appliances and equipment of the Subcontractor at the Work site, and through himself or others provide labor, equipment, and materials to prosecute the Work on such terms and conditions as shall be deemed necessary. The Contractor shall deduct the cost thereof, including without restriction thereto all charges, expenses, losses, costs, damages, and attorney's fees, incurred as a result of the Subcontractor's failure to perform, from any money then due or thereafter to become due to the Subcontractor under this Agreement.

**15.2**     The Contractor may, at any time and without default of Subcontractor, terminate the whole or any part of this Agreement for the convenience of the Contractor. Upon termination for convenience,

SUBCONTRACT AGREEMENT      GENERAL TERMS AND CONDITIONS                         J-1711-MEC-001

Subcontractor shall (i) immediately discontinue the Work on the date and to the extent specified in such notice, (ii) place no further orders for lower tiered subcontracts, equipment, or any other items or services except as may be necessary for completion of such portion of the Work as is not discontinued, (iii) promptly make every reasonable effort to procure cancellation upon terms satisfactory to Contractor of all lower tiered subcontracts and rental agreements to the extent they relate to the performance of the Work that is discontinued, unless Owner elects to take assignment of any such subcontracts, (iv) assist Contractor in the maintenance, protection, and disposition of Work in progress, (v) cooperate with Contractor for the efficient transition of the Work, (vi) cooperate with Contractor in the transfer of information and disposition of Work in progress and (vii) thereafter execute only that portion of the Work not terminated (if any) and that portion of the Work as may be necessary to preserve and protect Work already in progress and to protect equipment at the Site or in transit thereto, and to comply with any applicable law. Subcontractor agrees that upon any  such termination, the Subcontractor's sole remedy shall be payment of full value for all Work properly performed, plus reasonable profit thereon, less all payments Subcontractor has previously received on account of such Work performed. Subcontractor agrees to waive all claims for damages, including lost or anticipated profits, arising from or related to any such termination by Contractor.

**15.3**     Contractor may, for any reason, at any time and from time to time, by written SCR, suspend the carrying out the Work or any part thereof, whereupon Subcontractor shall suspend the carrying out of such suspended Work for such time or times and in such manner as Contractor may require and shall take reasonable steps to minimize any costs associated with such suspension.  During any such suspension, Subcontractor shall properly protect and secure such suspended Work in such manner as Contractor may reasonably require.  Unless otherwise instructed by Contractor, Subcontractor shall during any such suspension maintain its staff and labor on or near the Site and otherwise be ready to proceed expeditiously with the Work upon receipt of Contractor's further instructions. Except where such suspension ordered by Contractor is the result of or due to the fault or negligence of Subcontractor or any lower tiered subcontractor, Subcontractor shall be entitled to the reasonable costs (including actual, but not unabsorbed, overhead, contingency, risk and reasonable profit) of such suspension, including demobilization and remobilization costs, if necessary, along with appropriate supporting documentation to evidence such costs, and may be

entitled to a time extension to the Completion Deadline, if and to the extent permitted under this Agreement.  Upon receipt of notice to resume suspended Work, Subcontractor shall immediately resume performance of the Work to the extent required in the notice.  In no event shall Subcontractor be entitled to any additional profits or damages due to such suspension.

### ARTICLE 16     DISPUTE RESOLUTION

**16.1**     The parties will attempt in good faith to resolve any dispute, controversy or claim by mutual discussions and negotiations. Subcontractor's representative and KP Engineering's Project Manager, or other designated representatives of each party will meet at least once and will attempt to resolve the matter.

**16.2**     If the matter is not resolved by the initial representatives, they shall each refer the matter to a company executive to represent their respective party. The appointed executive delegates shall have the authority to settle the dispute. The Representatives shall promptly prepare and exchange memoranda stating the issues in dispute.

**16.3**     If the Executives do not resolve the matter, the parties will attempt in good faith to resolve the controversy or claim through non-binding mediation in accordance with the procedures and rules of the American Arbitration Association.

**16.4**     If the matter has not been resolved using the non-binding mediation procedure (which period may be extended by mutual agreement), the dispute shall be settled by binding arbitration, in accordance with the procedures, rules, and location selected by Contractor.

**16.5**     In case of any dispute between the parties hereto, the Subcontractor shall continue to diligently prosecute the Work pending determination thereof, unless requested by Contractor to suspend the Work or any portion thereof.

### ARTICLE 17     CONFIDENTIALITY

**17.1**     All plans, drawings, specifications, and other documentation related to the Work and this Subcontract Agreement, including attachments, exhibits, and all other documentations (including pricing information), given to or, provided by, the Subcontractor shall remain confidential and is the property of the Contractor. Any and all such information shall not be used by Subcontractor for any purpose other than in the performance of the Work. All drawings, sketches, specifications, standards, Subcontract Agreement, and all other

documentation pertaining to and/or developed for the Work and/or this Subcontract Agreement remains the property of Contractor and must be surrendered upon request of Contractor.

**17.2**   Subcontractor, Subcontractor's lower tier subcontractors, or vendors shall not disclose details of the Work or this Subcontract Agreement to any person, company, corporation, business entity, or organization except those engaged in its performance. Details may be revealed only then to the extent required for the particular part of the Work being done.

**17.3**   Subcontractor shall not reveal any information concerning details of the Work or this Subcontract Agreement to the press or a news organization or agency without Contractor's prior written approval. No photographs of the Work are to be taken without prior written approval by the Contractor. Subcontractor agrees that communication directly to OWNER is forbidden by this Agreement and shall not attempt to obtain publicity privileges except through Contractor.

**17.4**   The confidentiality obligations of this Article 20 shall survive the expiration or termination of this Agreement for a period of three (3) years following: (i) the termination or cancellation of this Agreement; or (ii) Final Completion, whichever occurs first.

## ARTICLE 18    GOVERNING LAW

**18.1**   This Subcontract shall be governed by the Laws of the State of Texas, without regard to choice of law principles. **THE PARTIES HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF OR RELATING TO THE SUBCONTRACT DOCUMENTS.**

## ARTICLE 19    MISCELLANEOUS

**19.1**   Severability: The partial or complete invalidity, illegality, or unenforceability of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. Any void provision shall be deemed severed from this Agreement and the balance of this Agreement shall be construed and enforced as if this Agreement did not contain the particular portion or provision held to be void.

**19.2**   No Waiver: Any failure by either party to enforce or assert any of the terms or conditions of this Subcontract, or to exercise any right or remedy hereunder, shall not constitute a waiver thereof.

**19.3**   Successors and Assigns: This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their successors and

permitted assigns.

**19.4**   Priority: In the event of any conflict or inconsistency within the various provisions of this Agreement, the Exhibits and other incorporated or associated documentation, the terms and conditions of this Agreement shall control.

**19.5**   Survival: The provisions of Article 18 (Dispute Resolution), Article 20 (Confidentiality), Article 21 (Governing Law), and the indemnities and warranties set forth in this Agreement shall survive the completion of the Work, the payment of all portions of the Subcontract Price, and any termination of this Agreement.

**19.6**   Captions: Titles and captions in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope of intent of this Agreement or the intent of any provision contained herein. Captions are not to be used in the interpretation of any provisions hereunder.

**19.7**   Cooperation: Subcontractor shall coordinate its Work, and fully cooperate with others performing work at the Jobsite. Contractor shall have the right to require Subcontractor to schedule the order of its Work in a manner that will minimize interference with any other parties involved. Contractor shall provide the final ruling on all coordination issues which cannot be resolved between Subcontractor and other parties at the Jobsite.

**19.8**   Books and Records:

**19.8.1**   Subcontractor shall keep, and shall cause its lower tier subcontractors to keep, such full and detailed books, records and accounts as may be necessary for compliance with its obligations under this Agreement for a period of five (5) years after Final Completion.

**19.8.2**   Such records must show the breakdown of labor, materials, (separately stated), overhead, and profit with respect to the Contract Price for the Work. Subcontractor shall keep such books, records and accounts at Subcontractor's principal place of business.

**19.8.3**   Contractor and/or Owner shall (by itself or through a representative) have the right to audit Subcontractor records in the event of (i) termination or cancellation under Article 17; or (ii) to verify costs in connection with a Change Order; or (iii) any documents relating to safety, security, quality or permits; or (iv) any Work performed by Subcontractor on a reimbursable basis; or (v) or any other portion of

SUBCONTRACT AGREEMENT    GENERAL TERMS AND CONDITIONS    J-1711-MEC-001

the Work priced on a cost plus basis. Subcontractor shall provide the auditors with reasonable access to all such books and records during normal business hours, and Subcontractor's personnel shall cooperate with the auditors to effectuate the audit or audits hereunder.

**19.8.4**   Contractor and/or Owner shall have no right to audit Subcontractor's costs of performing the fixed price or lump sum portions of the Work.

**19.9    Conflict of Interest and Ethics:** Subcontractor, in performing its obligations under this Agreement, shall establish appropriate business standards, procedures and controls including those necessary to avoid any real or apparent impropriety or adverse impact on the interests of the Contractor and/or Owner or any of its Representatives.

**19.10    Start-up Personnel:** Subcontractor shall provide such direct field craft labor and field engineering personnel to assist Owner during Start-up, Commissioning and Testing (including Performance Tests) of the Work as Owner may request (it being understood that the costs of such is not included in the Subcontract Price; any additional compensation for such Work will be addressed by Subcontract Change Request).

**19.11    License:** Subcontractor shall possess valid State of Texas, local governing authority, county or city  Contractor's or Trade Licenses, where required, authorizing him to do the types of Work covered by this Subcontract. Lower tier subcontractors shall be required to possess the appropriate licenses required by governing authorities authoring them to do the types of Work covered by their subcontracts. Subcontractor agrees that the State of Texas trade licensing requirements shall be strictly enforced for the Work covered by this Subcontract Agreement.

**19.12    Hazardous Materials:** Subcontractor shall not, nor shall it permit or allow any of its Sub-subcontractor to, bring any hazardous materials on the Site; provided, however, that Subcontractor may bring onto the Site such hazardous materials as are necessary to perform the Work so long as the same is done in compliance with applicable law and the Contract Documents, and Subcontractor shall be responsible for proper tagging and warning labels and shall remain responsible and strictly liable for all

such hazardous materials.  If Subcontractor or any Sub-subcontractor encounter pre-existing hazardous materials at the Site, and Subcontractor or any Sub-subcontractor knows or suspects that such material is hazardous material, Subcontractor and its Sub-subcontractors shall immediately stop Work in the affected area and notify Contractor and Owner.  If under such circumstances Sub-contractor or any of its or Sub-subcontractors fail to stop Work and notify Owner and Contractor, Subcontractor shall be responsible and liable to Owner and Contractor for all damages, costs, losses and expenses to the extent relating to such failure.  Subcontractor shall, at its own expense, dispose of all non-hazardous wastes and hazardous materials classified as waste under applicable law that are brought onto the Site or generated by Subcontractor, or it's Sub-subcontractors during performance of the Work ("**Waste**") at Owner-approved treatment, storage, or disposal facilities off-Site which are permitted to receive such wastes and hazardous materials; provided, however that: (i) Subcontractor shall coordinate with Contractor and Owner's EH&S coordinator to ensure that such Waste is properly characterized, profiled, labeled, manifested, stored, handled, transported, treated and/or disposed of, and Subcontractor shall reasonably assist Contractor and Owner in preparing any required records or reports; and (ii) Contractor and Owner shall direct and manage Subcontractor in the characterization, profiling, labelling, manifesting, storage, handling, transportation, treatment and/or disposal of such Waste.

## ARTICLE 20    ATTORNEYS FEES

**20.1**   In the event Subcontractor defaults in the performance of any of the terms, covenants, agreements or conditions of this Agreement, and Contractor seeks to enforce all or any part of this Agreement, Subcontractor agrees to pay Contractor's reasonable attorney's fees, whether suit is actually filed or not.

## ARTICLE 21    INTERPRETATION

**21.1**   Although the parties have utilized Contractor's form, they agree and recognize that the language in this Agreement is not to be construed against or for either party hereto.

**SUBCONTRACT AGREEMENT**      **GENERAL TERMS AND CONDITIONS**      J-1711-MEC-001

The parties hereto have caused these present to be signed as of the day and year first written above.

"CONTRACTOR"                              "SUBCONTRACTOR"

KP ENGINEERING LP.                        [Subcontractor]

By:_____        By:_____

Print Name:_____        Print Name: _Scottie Johnson_

Title:_____        Title: _President_

                          Date:            Date: _7/10/18_



**Exhibit 1**



**KP ENGINEERING**

# PURCHASE ORDER

5555 Old Jacksonville Hwy
Tyler, Texas 75703
Telephone: (903) 534-9155    Fax: (903) 534-9133

| | | |
|---|---|---|
| **Supplier** | Credos Fabrications, LLC<br>Attn: Scottie Johnson<br>P.O. Box 199<br>Quitman MS 39355<br>601-433-1272 | |

| | |
|---|---|
| **Order Number** | J1711-192 |
| **Order Date** | 3/28/2018 |
| **Delivery Date** | 3/28/2018 |
| **Terms** | Net 30 |
| **Special Terms** | - See Note # |
| **Ship Via** | |
| **Freight** | |

**Deliver to**    KP Engineering
c/o Targa Resources
38003 FM 1379
Midland TX 79706

Approved by:

| Item # | Cost Code | Description | Quantity | UOM | Rate | Amount |
|---|---|---|---|---|---|---|
| 1 | 9-1-400 | Provide labor and equipment to assist in the Mechanical Portion of the project. All work will be billed at T&M Rates and Invoices shall be submitted with signed timesheets from KPE Site Supervision. | 1.000 | Lot | $1,000,000.00 | $1,000,000.00 |

**Purchase Order Total**                    **$1,000,000.00**

*Supplier ("Seller") is to sign and date this purchase order in the space provided below acknowledging acceptance of this order and all attachments. The original signed purchase order must be returned to lparsons@kpe.com. KP Engineering LP takes it as agreement for the content in its entirety unless we receive objection within ten (10) business days of receipt of order.*

Accepted By: _Regina Johnson_    Date: _3-28-18_

nitiated By:   A. Hicks                    Page 6525 of 8158                    App. 00236



**PURCHASE - CHANGE ORDER**

5555 Old Jacksonville Hwy
Tyler, TX  75703
Telephone: (903) 534-9155   Fax:  (903) 534-9133

| | |
|---|---|
| **Supplier** | Credos Fabrications, LLC<br>Attn: Scottie Johnson<br>P.O. Box 199<br>Quitman MS 39355 |
| **Deliver to** | KP Engineering<br>c/o Targa Resources<br>38003 FM 1379<br>Midland TX 79706 |

| | |
|---|---|
| **Order Number** | J1711-192  /  2 |
| **Order Date** | 07/09/2018 |
| **Delivery Date** | 07/09/2018 |
| **Terms** | Net 30 |
| **Special Terms  - See Note #** | |
| **Ship Via** | |
| **Freight** | |
| **Approved By** | CKB 7/9/18   ot~wep |

| Item # | Cost Code | Description | Change Order Quantity | UOM | Rate | Change Amount |
|---|---|---|---|---|---|---|
| | 9-1-300 | Provide labor and equipment to assist in the Mechanical Portion of the project. All work will be billed at T&M Rates and Invoices shall be submitted with signed timesheets from KPE Site Supervision.<br><br>All requirements of Subcontract J-1711-MEC-001 remain unchanged | 1.000 | Lot | $1,500,000.00 | $1,500,000.00 |

| | |
|---|---|
| **Change Order Total** | **$1,500,000.00** |

_Supplier ("Seller") is to sign and date this purchase change order in the space provided below acknowledging acceptance of this change order and all attachments.  The original signed purchase change order must be returned to jparsons@kpe.com.  KP Engineering LP takes it as agreement for the content in its entirety unless we receive objection within ten (10) days of receipt of change order._

**Accepted By:** *Regina Johnson*     **Date:** 7-10-18

**Initiated By:** A. Hicks

Page: 1

**Exhibit 2**

**Credos Fabrications, LLC**
rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice: 251-751-7010
Fax:

# INVOICE

| | |
|---|---|
| Invoice Number: | 200-2.17 |
| Invoice Date: | 7/10/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID: KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| J1711-192/2 | Net 30 Days | | 8/9/18 |

| Description | Amount |
|---|---|
| Week 7-2 to 7-8-18 | |
| 1 Project Manager @ 66 hrs | 7,110.00 |
| 1 Pipe Superintendent @ 42 hrs | 3,440.00 |
| 1 Pipe Fitter Foreman @ 43 hrs | 2,870.00 |
| 1 Foreman @ 65 hrs | 5,037.50 |
| 5 Welders @ 325 hrs | 19,375.00 |
| 3 Welder helpers @ 193.5 hrs | 8,519.25 |
| 4 Pipe Fitter @ 260 hrs | 17,050.00 |
| 1 Operator @ 53 hrs | 2,796.50 |
| 22 Skilled Laborers @ 1290.5 hrs | 68,310.00 |
| 1 Corporate Office Manager @ 12 hrs | 420.00 |
| 5 Welding trucks @ 325 hrs | 14,625.00 |
| 1 Tool trailer @ 6 days | 2,100.00 |
| 1- 1 ton truck @ 6 days | 1,500.00 |
| Per Diem x 216 | 31,320.00 |

Check/Credit Memo N

| | |
|---|---|
| Subtotal | 184,473.25 |
| Sales Tax | |
| Total Invoice Amount | 184,473.25 |
| Payment/Credit Applied | |
| **TOTAL** | **184,473.25** |

App. 00238

**Credos Fabrications, LLC**
rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice: 251-751-7010
Fax:

**INVOICE** Exhibit 2

| Invoice Number: | 200-2.18 |
| Invoice Date: | 7/17/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID: KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| J1711-192/2 | Net 30 Days | | 8/16/18 |

| Description | Amount |
|---|---|
| Week 7-9 thru 7-15-18  Per Diem x 242 | 35,090.00 |
| 1 Project Manager @ 64 hrs | 6,840.00 |
| 1 Pipe Superintendent @ 64 hrs | 6,080.00 |
| 1 Pipe Fitter Foreman @ 57.5 hrs | 4,175.00 |
| 1 Welding Foreman @ 42 hrs | 2,980.00 |
| 2 Foremen @ 96 hrs | 7,345.00 |
| 6 Welders @ 301 hrs | 17,575.00 |
| 2 Welder's helpers @ 113.5 | 4,819.25 |
| 4 Pipe Fitters @ 196.5 hrs | 12,320.00 |
| 1 Operator @ 11 hrs | 517.00 |
| 29 Skilled Laborers @ 1569 hrs | 82,158.75 |
| 1 Corporate Office Manager @ 12 hrs | 420.00 |
| 6 Welding Trucks @ 301 hrs | 13,545.00 |
| 1 Tool Trailer @ 6 days | 2,100.00 |
| 1- 1 Ton Truck@ 6 days | 1,500.00 |
| F&R Inv 9691 welding Procedures | 3,105.00 |
| F&R Inv 9431 welding procedures | 17,531.75 |
| F&R Inv 9455 Welding procedures | 1,322.50 |
| F&R Inv 9471 Welding procedures | 2,817.50 |
| F&R Inv 9597 welding Procedures | 3,622.50 |

| | | |
|---|---|---|
| | Subtotal | 225,864.25 |
| | Sales Tax | |
| | Total Invoice Amount | 225,864.25 |
| Check/Credit Memo N| | Payment/Credit Applied | |
| | **TOTAL** | **225,864.25** |

App. 00239

**Exhibit 2**

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:    251-751-7010
Fax:

# INVOICE

| | |
|---|---|
| Invoice Number: | 200-2.19 |
| Invoice Date: | 7/24/18 |
| Page: | 1 |

*Duplicate*

| Bill To: |
|---|
| KPE |
| 5555 Old Jacksonville HWY |
| Tylertown, TX  75703-3379 |

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| J1711-192/2 | Net 30 Days | | 8/23/18 |

| Description | Amount |
|---|---|
| Week 7-16 to 7-22-18 | |
| 1 Project manager @ 58 hrs | 6,030.00 |
| 1 Pipe Superintendent @ 47 hrs | 4,040.00 |
| 1 Pipe Fitter Foreman @ 58 hrs | 4,220.00 |
| 1 Welding Foreman @ 65 hrs | 4,850.00 |
| 2 Foremen @ 136 hrs | 10,660.00 |
| 4 Welders @ 242 hrs | 14,150.00 |
| 1 Welders Helpers @ 61 hrs | 2,645.50 |
| 2 Pipe Fitters @ 126 hrs | 8,195.00 |
| 29 Skilled Laborers @ 1826 hrs | 97,155.00 |
| 1 Corporate Office Manger @ 14 hrs | 490.00 |
| 4 Welding trucks @ 242 hrs | 10,890.00 |
| 1 Tool trailer @ 7 days | 2,450.00 |
| 1- 1 ton truck @ 7 days | 1,750.00 |
| 1- 1/2 ton truck @ 5 days | 1,000.00 |
| Per Diem x 261 | 37,845.00 |
| Ink- see attached receipt | 59.60 |
| Ink- see attached receipt | 62.03 |
| Fuel- see attached receipt | 49.88 |

Check/Credit Memo N

| | |
|---|---|
| Subtotal | 206,542.01 |
| Sales Tax | |
| Total Invoice Amount | 206,542.01 |
| Payment/Credit Applied | |
| **TOTAL** | **206,542.01** |

App. 00240

**Credos Fabrications, LLC**
rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice: 251-751-7010
Fax:

**INVOICE**  Exhibit 2

| | |
|---|---|
| Invoice Number: | 200-2.20 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID: KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| J1711-192/2 | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| week 7-23 to 7-29-18 | |
| 1 Project Manager @ 58 hrs | 6,210.00 |
| 1 Pipe Superintendent @ 61 hrs | 5,720.00 |
| 1 Pipe Fitter Foreman @ 52 hrs | 3,680.00 |
| 2 Foremen @ 115 hrs | 8,612.50 |
| 1 Office Manager @ 35 hrs | 1,417.50 |
| 3 Welders @ 165 hrs | 9,925.00 |
| 2 Welder Helpers @ 116 hrs | 5,143.00 |
| 2 Pipe Fitters @ 89 hrs | 5,747.50 |
| 29 Skilled Laborers @ 1717 hrs | 90,472.50 |
| 1 Corporate Office Manager @ 12 hrs | 420.00 |
| 3 Welding Trucks @ 165 hrs | 7,425.00 |
| 1 Tool Trailer @ 6 days | 2,100.00 |
| 1- 1 ton truck @ 6 days | 1,500.00 |
| Per Diem x 235 | 34,075.00 |

Check/Credit Memo N

| | |
|---|---|
| Subtotal | 182,448.00 |
| Sales Tax | |
| Total Invoice Amount | 182,448.00 |
| Payment/Credit Applied | |
| **TOTAL** | **182,448.00** |

App. 00241

**Exhibit 2**

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:    251-751-7010
Fax:

## INVOICE

| | |
|---|---|
| Invoice Number: | 200-2.21 |
| Invoice Date: | 8/7/18 |
| Page: | 1 |

| Bill To: |
|---|
| KPE
5555 Old Jacksonville HWY
Tylertown, TX  75703-3379 |

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| J-1711-192/2 | Net 30 Days | | 9/6/18 |

| Description | Amount |
|---|---|
| Week 7/30 to 8/5/18 | |
| 1 Project Manager @ 38.5 hrs | 3,465.00 |
| 1 Pipe Superintendent @ 27.5 hrs | 2,200.00 |
| 1 Pipe Fitter Foreman @ 38.5 hrs | 2,502.50 |
| 2 Foremen @ 66 hrs | 4,290.00 |
| 1 Office Manager @ 35 hrs | 1,225.00 |
| 3 Welders @ 102.5 hrs | 5,125.00 |
| 2 Welder Helpers @ 77 hrs | 2,849.00 |
| 2 Pipe Fitters @ 62.5 hrs | 3,437.50 |
| 29 Skilled Laborers @ 1018 hrs | 45,810.00 |
| 1 Corporate Office Manager @ 8 hrs | 280.00 |
| 3 Welding Trucks @ 102.5 hrs | 4,612.50 |
| 1 Tool Trailer @ 4.25 days | 1,487.50 |
| 1- 1ton truck @ 4.25 days | 1,062.50 |
| Per Diem x 163.75 | 23,743.75 |

Check/Credit Memo No

| | |
|---|---|
| Subtotal | 102,090.25 |
| Sales Tax | |
| Total Invoice Amount | 102,090.25 |
| Payment/Credit Applied | |
| **TOTAL** | **102,090.25** |

App. 00242

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice: 251-751-7010
Fax:

**INVOICE** **Exhibit 2**

| | |
|---|---|
| Invoice Number: | 200-3.1 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID: KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| TARGA/KPE DRiver Plant - week 7-23 to 7-29-18 | |
| 1 Welding Foreman @ 56 hrs | 4,040.00 |
| 1 Welder @ 63 hrs | 3,725.00 |
| 2 Skilled Laborers @ 104 hrs | 5,715.00 |
| 1 Welding Truck @ 63 hrs | 2,835.00 |
| 1 - 1/2 ton truck @ 5 days | 1,000.00 |
| Per Diem x 21 | 3,045.00 |

Check/Credit Memo N(

| | |
|---|---|
| Subtotal | 20,360.00 |
| Sales Tax | |
| Total Invoice Amount | 20,360.00 |
| Payment/Credit Applied | |
| **TOTAL** | **20,360.00** |

App. 00243

**Exhibit 2**

## Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice:   251-751-7010
Fax:

# INVOICE

| | |
|---|---|
| Invoice Number: | 200-3.2 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX  75703-3379

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| RFI # 072  Date 7-24-18 | |
| 1 Project Manager @ 1 hr | 90.00 |
| 1 Welder @ 6 hrs | 300.00 |
| 1 Welder Helper @ 6 hrs | 222.00 |
| 1 Pipe Fitter @ 6 hrs | 330.00 |
| 1 Welding truck @ 6 hrs | 270.00 |

| | | |
|---|---|---|
| Check/Credit Memo N | Subtotal | 1,212.00 |
| | Sales Tax | |
| | Total Invoice Amount | 1,212.00 |
| | Payment/Credit Applied | |
| | **TOTAL** | **1,212.00** |

App. 00244

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:    251-751-7010
Fax:

# INVOICE

Exhibit 2

| | |
|---|---|
| Invoice Number: | 200-3.3 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

| Bill To: |
|---|
| KPE<br>5555 Old Jacksonville HWY<br>Tylertown, TX  75703-3379 |

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| RFI # 80  Date 7-23-18 | |
| 1 Project Manager @ 1 hr | 90.00 |
| 1 Welder @ 3 hrs | 150.00 |
| 1 Pipe Fitter @ 3 hrs | 165.00 |
| 1 Skilled Laborer @ 3 hrs | 135.00 |
| 1 Welding Truck @ 3 hrs | 135.00 |

| | | |
|---|---|---|
| | Subtotal | 675.00 |
| | Sales Tax | |
| | Total Invoice Amount | 675.00 |
| | Payment/Credit Applied | |
| Check/Credit Memo N | **TOTAL** | **675.00** |

App. 00245

**Exhibit 2**

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:   251-751-7010
Fax:

INVOICE

Invoice Number:  200-3.4
Invoice Date:     7/31/18
Page:             1

*Duplicate*

| Bill To: |
| --- |
| KPE
5555 Old Jacksonville HWY
Tylertown, TX  75703-3379 |

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
| --- | --- | --- | --- |
|  | Net 30 Days |  | 8/30/18 |

| Description | Amount |
| --- | --- |
| RFI # 71   Date 7-25-18 |  |
| 1 Project manager @ 1 hr | 90.00 |
| 1 Welder @ 4 hrs | 200.00 |
| 1 Welder Helper @ 4 hrs | 148.00 |
| 1 Pipe Fitter @ 4 hrs | 220.00 |
| 1 Welding Truck @ 4 hrs | 180.00 |

Check/Credit Memo N

| | |
| --- | --- |
| Subtotal | 838.00 |
| Sales Tax |  |
| Total Invoice Amount | 838.00 |
| Payment/Credit Applied |  |
| **TOTAL** | **838.00** |

App. 00246

**Credos Fabrications, LLC**
rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:    251-751-7010
Fax:

**INVOICE** **Exhibit 2**

| | |
|---|---|
| Invoice Number: | 200-3.5 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX  75703-3379

Customer ID:   KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| RFI # 49  Date 7-27-18 | |
| 1 Project manager @ 1 hr OT | 135.00 |
| 1 Welder @ 4 hrs  OT | 300.00 |
| 1 Pipe Fitter @ 4 hrs | 220.00 |
| 1 Skilled Laborer @ 4 hrs  OT | 270.00 |
| 1 Welding Truck @ 4 hrs | 180.00 |

Check/Credit Memo N

| | |
|---|---|
| Subtotal | 1,105.00 |
| Sales Tax | |
| Total Invoice Amount | 1,105.00 |
| Payment/Credit Applied | |
| **TOTAL** | **1,105.00** |

**App. 00247**

**Exhibit 2**

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS  39355
USA

Voice:    251-751-7010
Fax:

# INVOICE

| | |
|---|---|
| Invoice Number: | 200-3.6 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX  75703-3379

Customer ID:  KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| RFI # 30  Date 7-27-18 | |
| 1 Project manager @ 1 hr OT | 135.00 |
| 1 Welder @ 5 hrs  OT | 375.00 |
| 1 Pipe Fitter @ 5 hrs | 275.00 |
| 1 Skilled Laborer @ 5 hrs OT | 337.50 |
| 1 Welding Truck @ 5 hrs | 225.00 |
| Per Diem x 3 | 435.00 |

Check/Credit Memo N

| | |
|---|---|
| Subtotal | 1,782.50 |
| Sales Tax | |
| Total Invoice Amount | 1,782.50 |
| Payment/Credit Applied | |
| **TOTAL** | **1,782.50** |

App. 00248

**Exhibit 2**

# Credos Fabrications, LLC

rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

Voice:    251-751-7010
Fax:

## INVOICE

| | |
|---|---|
| Invoice Number: | 200-3.7 |
| Invoice Date: | 7/31/18 |
| Page: | 1 |

*Duplicate*

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID:   KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 8/30/18 |

| Description | Amount |
|---|---|
| RFI # 84  Date 7-27-18 | |
| 1 Project manager @ 1 hr OT | 135.00 |
| 1 Welder @ 2 hrs OT | 150.00 |
| 1 Pipe Fitter 1 RT hr and 1 OT hr | 137.50 |
| 1 Skilled Laborer @ 2 hrs OT | 135.00 |
| 1 Welding Truck @ 2hrs | 90.00 |

| | | |
|---|---|---|
| | Subtotal | 647.50 |
| | Sales Tax | |
| | Total Invoice Amount | 647.50 |
| Check/Credit Memo N | Payment/Credit Applied | |
| | **TOTAL** | **647.50** |

App. 00249

# INVOICE   Exhibit 2

**Credos Fabrications, LLC**
rjohnson@credosfab.com
PO Box 199
Quitman, MS 39355
USA

| | |
|---|---|
| Invoice Number: | 200-3.8 |
| Invoice Date: | 8/7/18 |
| Page: | 1 |

Voice:    251-751-7010
Fax:

**Bill To:**

KPE
5555 Old Jacksonville HWY
Tylertown, TX 75703-3379

Customer ID: KPE

| Customer PO | Payment Terms | Sales Rep ID | Due Date |
|---|---|---|---|
| | Net 30 Days | | 9/6/18 |

| Description | Amount |
|---|---|
| TARGA/KPE Driver Plant - Week 7/30 to 8/5/18 | |
| 1 Welder @ 11 hrs | 550.00 |
| 2 Skilled Laborers @ 22 hrs | 990.00 |
| 1 Welding Truck @ 11 hrs | 495.00 |
| Per Diem x 3 | 435.00 |

Check/Credit Memo No

| | |
|---|---|
| Subtotal | 2,470.00 |
| Sales Tax | |
| Total Invoice Amount | 2,470.00 |
| Payment/Credit Applied | |
| **TOTAL** | **2,470.00** |

App. 00250

## CAUSE NO. CV54856

| | | |
|---|---|---|
| HANCOCK MECHANICAL, LLC d/b/a HANCOCK MECHANICAL WELDING & FABRICATION, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| KP ENGINEERING, LP and TARGA PIPELINE MID-CONTINENT WESTTEX LLC, | § § § | MIDLAND COUNTY, TEXAS |
| Defendant/ Counter-Claimant/Third-Party Plaintiff, | § § § | |
| v. | § § | |
| BOUNDS CONSTRUCTION, LLC, et al., | § § | |
| Third-Party Defendants. | § | 238TH JUDICIAL DISTRICT |

## ORDER

Before the Court is a Motion for Partial Summary Judgment filed by Pierce Construction and Maintenance Co., Inc. ("Pierce"). After consideration of the motion, the response of KP Engineering, LP, the evidentiary materials submitted by the parties, and the arguments of counsel, the Court finds that the motion should be and is hereby DENIED.

Signed this _____ day of _____, 2019.

_____
JUDGE PRESIDING

## CAUSE NO. CV54856

| | | |
|---|---|---|
| HANCOCK MECHANICAL, LLC d/b/a HANCOCK MECHANICAL WELDING & FABRICATION, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| KP ENGINEERING, LP and TARGA PIPELINE MID-CONTINENT WESTTEX LLC, | § § § § | MIDLAND COUNTY, TEXAS |
| Defendant/ Counter-Claimant/Third-Party Plaintiff, | § § § | |
| v. | § § | |
| BOUNDS CONSTRUCTION, LLC, et al., | § § | |
| Third-Party Defendants. | § | 238TH JUDICIAL DISTRICT |

## <u>ORDER</u>

Before the Court is a Motion for Continuance filed by KP Engineering, LP's ("KPE") in response to the Motion for Partial Summary Judgment filed by Pierce Construction and Maintenance Co., Inc. ("Pierce"). After consideration, the Court finds that KPE's motion should be and is hereby GRANTED.

Signed this _____ day of _____, 2019.

_____
JUDGE PRESIDING

**ORDER**
079610.0000017 EMF_US 74942763v2

**PAGE SOLO**

**CAUSE NO. CV54856**

| | | |
|---|---|---|
| HANCOCK MECHANICAL, LLC d/b/a HANCOCK MECHANICAL WELDING & FABRICATION, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| KP ENGINEERING, LP and TARGA PIPELINE MID-CONTINENT WESTTEX LLC, | § § § § | MIDLAND COUNTY, TEXAS |
| Defendant/ Counter-Claimant/Third-Party Plaintiff, | § § § | |
| v. | § § | |
| BOUNDS CONSTRUCTION, LLC, et al., | § § § | |
| Third-Party Defendants. | § | 238TH JUDICIAL DISTRICT |

### KP ENGINEERING, LP'S RESPONSE IN OPPOSITION TO SEFTON STEEL, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

KP Engineering, LP ("KPE"), subject to and without waiving its Motion to Continue July 18 Summary Judgment Hearings filed herewith, responds to the Motion for Partial Summary Judgment filed by Sefton Steel, LP ("Sefton") as follows:

### Introduction and Grounds for Denying Sefton's Motion for Partial Summary Judgment

By its cross claims, Sefton contends it is entitled to payments for providing labor and materials to a cryogenic plant in Midland County, Texas (the "Johnson Project"), owned by Defendant and Cross-Defendant Targa Pipeline Mid-Continent WestTex, LLC ("Targa"). However, in making its demands, Sefton has sought payment for unauthorized amounts, failed to

---

provide proper invoicing and other documentation to substantiate what work it allegedly performed, and otherwise did not properly disclose the basis for its claimed charges. Sefton now contends it is entitled to summary judgment, as a matter of law, on its claims for (1) breach of contract, (2) suit on sworn account, and (3) attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

The Court should deny Sefton's motion on all three grounds. First, numerous factual issues preclude summary judgment on Sefton's breach of contract claim. Sefton attempts to prove up its breach of contract claim only by attaching a single, self-serving affidavit that purports to (1) establish the existence of a purchase order and purchase-change orders; (2) prove that certain invoices constitute business records of Sefton, and (3) make a general conclusory assertion in a single sentence that "SEFTON completed its work under the Contract" without separately addressing any terms of any contract or the reasonableness of any rates charged for such work. Notably, there is not any evidence that Sefton complied with the requisite purchase order term to not charge any prices that "exceed the selling price for same or substantially same items to any other buyer, taking into account the quantity and applicable law." The lack of evidence provided by Sefton on summary judgment is critical and underscores KPE's complaints with Sefton's claims in this lawsuit. As shown herein, the evidence submitted by KPE will show that Sefton seeks payment for undocumented work, as well as work that was not authorized by the contract or otherwise approved by KPE. Genuine disputes of material fact preclude summary judgment on Sefton's breach of contract claim.

Second, Sefton is not entitled to summary judgment on its claim for suit on sworn account. To recover on this claim, Sefton is required to show that KPE did not file a sworn

denial in this case.  Because KPE timely filed its sworn denial, Sefton's sworn account claim fails.

For its final summary judgment ground, Sefton argues it is entitled to attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code.  This argument is baseless. By the statute's plain terms, chapter 38 attorney's fees can only be recovered against an "individual" or a "corporation."  The statute does not authorize attorney's fees against a limited partnership such as KPE.

Accordingly, KPE respectfully seeks an order denying Sefton's motion for summary judgment.

### Summary Judgment Evidence

KPE relies on the following evidence in response to Sefton's motion for summary judgment:

- Exhibit 1: Affidavit of Pete Newsome

- Exhibit 1-A: Purchase orders and purchase-change orders

### Factual Background

Sefton seeks payment for work it allegedly performed for the Johnson Project beginning as early as January 2018.  To recover for such work, the applicable purchase orders (and purchase-change orders) required Sefton to submit proper documentation substantiating the work it performed.  *See* KPE's Ex. 1-A, at pp. 1-5 (Purchase Order No. J1711-110).  Specifically, the applicable purchase orders and purchase-change orders required:

- "Invoices must be supported by such documents as [KPE] may require."

- "Individual invoices showing purchase other number, items purchased and detailed price information including taxes, duties, and other fees and charges must be issued for each shipment."

- "Payments may be withheld or portions thereof may be deducted by [KPE] if, in [KPE's] opinion, [Sefton] failed to perform in accordance with the provisions of this Order."

*See* KPE's Ex. 1-A at p. 3 (Purchase Order No. J1711-110 at § 3).

The purchase orders and purchase-change orders also prohibited Sefton from charging prices that "exceed the selling price for same or substantially same items to any other buyer, taking into account the quantity and applicable law." KPE's Ex. 1-A at p. 3 (Purchase Order No. J1711-110 at § 2).

The terms of the parties' agreements were clear, but Sefton nonetheless failed to satisfy its contractual obligations. In connection with its work on the Johnson Project, Sefton submitted invoicing that did not comply with KPE's billing guidelines, did not substantiate the labor and materials that were allegedly provided to KPE, and included charges for unauthorized or duplicative work. More specifically, the omissions and defects with Sefton's claims for payment include, but are not limited to, the following:

- Certain invoices did not come with documentation to substantiate the claimed charges or work provided;

- Certain invoices did not provide required material test result (MTR) documentation to establish the certification of certain materials that Sefton claims to have delivered;

- Sefton claimed amounts in some instances above what KPE approved for certain work; and

- Sefton's invoicing indicates a duplication of charges.

*See* KPE's Ex. 1, Newsome Aff. ¶¶ 6-19.

## Objections to Sefton's Summary Judgment Evidence

In connection with its motion, Sefton has submitted certain materials that suffer from various evidentiary issues rendering them inadmissible or controverted. KPE specifically objects

to Sefton's proposed summary judgment evidence, and Sefton's characterization of that evidence, as follows:

1.      KPE objects to paragraph 6 of Sefton's motion for summary judgment to the extent it jumps to a general, self-serving opinion statement that "SEFTON completed its work under the Contract" and then cites to certain invoices for support.  The mere submission of an invoice—especially one that lacks supporting documentation and is otherwise incomplete—does not constitute "proof" of performance.  The purported "undisputed facts" stated in this paragraph are disputed.

2.      KPE objects to paragraph 7 of Sefton's motion for summary judgment to the extent it makes a general opinion statement that "KPE failed to pay SEFTON sums due under the Invoices [allegedly amounting to] $379,013.44, plus interest."  The purported "undisputed facts" stated in this paragraph are disputed.

3.      KPE objects to paragraph 9 of Sefton's motion for summary judgment to the extent it makes a general opinion statement that KPE refused to pay amounts that Sefton incorrectly presumes to be owed.  The purported "undisputed facts" stated in this paragraph are disputed.

4.      KPE objects to the Affidavit of Patrick Collier, attached as Exhibit A to Sefton's motion for summary judgment to the extent it (1) contains a general, self-serving opinion statement that "SEFTON completed its work under the Contract" and then cites to certain invoices for support, when the mere submission of an invoice—especially one that lacks supporting documentation and is otherwise incomplete—does not constitute "proof" of performance; (2) makes general opinion statements, such as that "KPE failed to pay SEFTON sums due under the Invoices [allegedly amounting to] $379,013.44, plus interest" and that such

sums are otherwise due to be paid; and (3) attempts to prove up demand letters that were neither authored by the affiant, nor sent by the affiant to KPE.

## <u>Legal Standard</u>

A movant is only entitled to traditional summary judgment if no material facts are genuinely in dispute and judgment in the movant's favor is required as a matter of law. Tex. R. Civ. P. 166a. To support a motion for summary judgment, the movant must provide testimonial evidence that is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies." Tex. R. Civ. P. 166a(c); *see also Ortega v. Pean*, No. 01-18-00249-CV, 2019 WL 1560859, at *8 (Tex. App.—Houston [1st Dist.] Apr. 11, 2019) ("[W]hile the rules governing summary judgment require that testimonial evidence of an interested witness be 'clear, positive and direct, otherwise credible and free from contradictions and inconsistencies' in order for a summary judgment to be based on such evidence, 'there is no such strict requirement for testimonial evidence used to defeat summary judgment.'") (internal citations omitted).

If the movant does not carry its initial burden, or the evidence submitted fails to conclusively establish a cause of action against the nonmovant, the nonmovant is not required to respond or to present any evidence. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013); *see Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Evidence is conclusive only if reasonable people could not differ in their conclusions."). If evidence favorable to the non-movant is submitted, that evidence must be accepted as true, and every reasonable inference regarding that evidence must be resolved in the nonmovant's favor. *Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 329 (Tex. App.—Eastland 2000, no pet.). Even if the movant carries its initial burden, summary judgment must be denied if the nonmovant identifies any genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899

S.W.2d 195, 197 (Tex. 1995); *see Wilsher v. City of Abilene*, No. 11-11-00355-CV, 2013 WL 6924004, at *3 (Tex. App.—Eastland Dec. 31, 2013, pet. denied) (reversing traditional summary judgment as the result of an existing fact issue).

## Argument & Authorities

**A.   Sefton is not entitled to summary judgment on its claim for breach of contract.**

To establish its breach of contract claim on summary judgment, Sefton must show that there is no genuine dispute of fact as to whether (1) a valid contract exists, (2) Sefton adequately performed under the contract, (3) the contract was breached by KPE, and (4) Sefton suffered certain damages arising from the alleged breach. *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.). Sefton has not met its burden of proof here. Issues and defects associated with Sefton's claims for payment include, but are not limited to, the following:

- Certain invoices did not come with documentation to substantiate the claimed charges or work provided;

- Certain invoices did not provide required material test result (MTR) documentation to establish the certification of certain materials that Sefton claims to have delivered;

- Sefton claimed amounts in some instances above what KPE approved for certain work; and

- Sefton's invoicing indicates a duplication of charges.

*See* KPE's Ex. 1, Newsome Aff. ¶¶ 6-19. The lack of adequate documentation provided by Sefton is especially significant, in light of the numerous general materials that Sefton claims to have provided, but which KPE has now been left with no way to verify. The purchase orders and purchase change-orders were clear that supporting documentation of work performed was required to avoid this exact type of unsubstantiated claim by Sefton.

Further, the applicable purchase orders and purchase-change orders prohibited Sefton from charging prices that "exceed[ed] the selling price for same or substantially same items to

any other buyer, taking into account the quantity and applicable law."  *See* KPE's Ex. 1-A at p. 3 (Purchase Order No. J1711-110 at § 2).  On summary judgment, Sefton attaches no affidavit testimony to establish the reasonableness of the rates it charged to KPE, much less that the rates complied with section 4 of the purchase order contracts.

Accordingly, there are numerous disputes of material fact that preclude summary judgment on Sefton's breach of contract claim.

**B.      Sefton is not entitled to summary judgment on its claim for suit on sworn account.**

A suit on sworn account may proceed only if the defendant fails to timely file a sworn denial to the lawsuit.  Tex. R. Civ. P. 185; *see Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 268 (Tex. App.—Waco 2003, pet. denied) ("If the sworn denials are filed, . . . the evidentiary effect of the itemized account is destroyed, and the party must prove its claim.").  To be timely, a sworn denial must be on file at least seven days before a hearing on summary judgment or trial.  *A.J.P. Oil Co., LLC v. Velvin Oil Co., Inc.*, No. 06-15-00061-CV, 2016 WL 489450, at *4 (Tex. App.—Texarkana Feb. 5, 2016, no pet.) (citing Tex. R. Civ. P. 63).  Here, KPE filed a sworn denial within the required time period.  Sefton therefore has no basis to recover for a suit on sworn account, whether on summary judgment or otherwise.

**C.      Sefton is not entitled to an award of attorney's fees.**

For its last argument, Sefton argues it is entitled to summary judgment on its claim for attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code.  This argument is legally baseless.  Chapter 38 only provides for the recovery of attorney's fees "from an individual or corporation."  Tex. Civ. Prac. & Rem. Code § 38.001.  Because KPE is a limited partnership, Sefton has no basis to seek chapter 38 attorney's fees against KPE in this case. *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 214 (Tex. App.—Houston [1st Dist.] 2016, no

---

pet.) ("We hold that section 38.001 of the Civil Practice and Remedies Code does not permit recovery against a limited partnership.").

**D.     Summary judgment proceedings are premature at this time.**

As a final point, Sefton's motion is premature, as this case is still at an early stage, with a scheduling order recently entered, a discovery protocol order soon to be filed, and a large two-day mediation involving nearly forty parties set for July 30 and 31.   For these reasons and others—as more specifically addressed in KPE's pending Motion to Continue July 18 Summary Judgment Hearing—KPE respectfully requests a continuance of Sefton's motion for summary judgment until this case proceeds beyond the current stage of litigation.

<u>Conclusion</u>

For the foregoing reasons, Defendant KPE respectfully requests that the Court grant KPE's objections to Sefton's summary judgment evidence, deny Sefton's motion, grant a continuance as necessary, and award KPE such other and further relief to which it may show itself justly entitled.

Dated: July 11, 2019                              Respectfully submitted,

                                                  **HUNTON ANDREWS KURTH LLP**

                                                  By:   */s/ Ted A. Huffman*
                                                  　　　JAMES W. BOWEN
                                                  　　　State Bar No. 02723305
                                                  　　　jbowen@huntonak.com
                                                  　　　TED A. HUFFMAN
                                                  　　　State Bar No. 24089015
                                                  　　　thuffman@huntonak.com
                                                  　　　MICHAEL C. LEE
                                                  　　　State Bar No. 24109461
                                                  　　　mlee@huntonak.com
                                                  　　　1445 Ross Avenue, Suite 3700
                                                  　　　Dallas, Texas  75202-2799
                                                  　　　Telephone:   214-979-3000
                                                  　　　Facsimile:    214-880-0011

– and –

**ANDREWS MYERS, P.C.**

WILLIAM K. ANDREWS
State Bar No. 01252100
wandrews@andrewsmyers.com
T. CHAMPE FITZHUGH
State Bar No. 24025874
cfitzhugh@andrewsmyers.com
ROBERT A. PLESSALA
State Bar No. 16069200
rplessala@andrewsmyers.com
1885 Saint James Place, 15th Floor
Houston, Texas  77056
Telephone:   713-850-4200
Facsimile:   713-850-4211

**COUNSEL FOR KP ENGINEERING, LP**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing instrument was served via the Court's electronic filing system on counsel of record, on this 11th day of July, 2019.

*/s/ Ted A. Huffman*
Ted A. Huffman

# Exhibit 1

CAUSE NO.  CV54856

| | | |
|---|---|---|
| HANCOCK MECHANICAL, LLC d/b/a HANCOCK MECHANICAL WELDING & FABRICATION, | § § § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KP ENGINEERING, LP and TARGA PIPELINE MID-CONTINENT WESTTEX LLC, | § § § | |
| | § | MIDLAND COUNTY, TEXAS |
| | § | |
| Defendant/ Counter-Claimant/Third-Party Plaintiff, | § § | |
| | § | |
| v. | § | |
| | § | |
| BOUNDS CONSTRUCTION, LLC, et al., | § § | |
| | § | |
| Third-Party Defendants. | § | 238TH JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF PETER NEWSOME</u>

| | |
|---|---|
| **STATE OF TEXAS** | **§** |
| | **§** |
| **COUNTY OF SMITH** | **§** |

Before me, the undersigned authority, on this day personally appeared Peter Newsome, who, after being by me duly sworn, did testify and swear as follows:

1.      My name is Peter Newsome.  I am over 18 years of age and am otherwise competent to execute this affidavit.

2.      In 2016, KP Engineering, LP ("KPE") hired me to work for them, and, over time, I became a site construction manager for KPE at the Johnson Project.  In connection with my job duties at KPE, I review purchase orders, purchase-change orders, invoicing, and other documentation submitted by subcontractors who seek payment from KPE for work performed on particular construction projects, and, based on such documentation, I make recommendations to

**AFFIDAVIT OF PETER NEWSOME – Page 1 of 5**

KPE's management whether or not those subcontractors are entitled to payment.  In connection with this role, I have become familiar with KPE's purchase order forms, purchase-change order forms, and rate sheets, as well as its invoicing, accounting, and payment approval procedures.

3.       Through my employment and the performance of my job duties at KPE, I have gained personal knowledge of the facts stated in this affidavit, and each such fact is true and correct.   I have reviewed the motion for summary judgment and the supporting exhibits that were filed by Sefton Steel, LP ("Sefton"), and other documentation that Sefton has submitted to KPE, and I have become familiar with those documents.

4.       For Sefton's work on the 200MM cf/day gas cryogenic plant in Midland County (known as the "Johnson Project"), owned by Targa Pipeline Mid-Continent WestTex, LLC ("Targa"), there are a number of applicable purchase orders and purchase-change orders.  A true and correct copy of these purchase orders and purchase-change orders are attached, collectively, as **Exhibit 1-A** to this affidavit.

5.       During its time working on the Johnson Project, Sefton submitted invoicing and supporting documentation to KPE seeking payment for work allegedly performed by Sefton.

6.       Based on my review of Sefton's invoicing and the supporting documentation in KPE's Johnson Project file received from Sefton, I have identified the following issues, supporting KPE's determination to deny payment of the Sefton invoices at this time:

7.       With respect to Sefton Invoice #16333, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

8.        With respect to Sefton Invoice #16334, there is a lack of documentation

**AFFIDAVIT OF PETER NEWSOME – Page 2 of 5**

substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

9.      With respect to Sefton Invoice #16335, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

10.      With respect to Sefton Invoice #16336, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

11.      With respect to Sefton Invoice #16355, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

12.      With respect to Sefton Invoice #16357, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

13.      With respect to Sefton Invoice #16358, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

14.     With respect to Sefton Invoice #16376, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.  This invoice also reflects that Sefton sought to charge more than was approved by KPE under the applicable change order.

15.     With respect to Sefton Invoice #16377, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

16.     With respect to Sefton Invoice #16380, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

17.     With respect to Sefton Invoice #16398, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

18.     With respect to Sefton Invoice #16400, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result (MTR) documentation to establish the certification of materials that Sefton claims to have delivered.  This invoice also appears to contain charges for amounts previously invoiced.

19.     With respect to Sefton Invoice #16415, there is a lack of documentation substantiating the claimed charges or work provided, and a lack of a required material test result

(MTR) documentation to establish the certification of materials that Sefton claims to have delivered.

FURTHER AFFIANT SAYETH NOT.

Peter Newsome

SWORN TO AND SUBSCRIBED before me this \_\_\_10ᵗʰ\_\_\_ day of July, 2019.



Notary Public in and for the State of Texas

Yvonne Smith
Printed Name of Notary

My Commission Expires:

4-22-2020

# Exhibit 1-A



**KP ENGINEERING**

**PURCHASE ORDER**

5555 Old Jacksonville Hwy
Tyler, Texas  75703
Telephone:  (903) 534-9155    Fax:  (903) 534-9133

**Supplier** Sefton Steel, LP
     Attention:  Patrick Collier
     1830 Aldine Mall Route
     Houston TX 77039
     (281)449-8677

**Deliver to**  SEE NOTE 12

| | |
|---|---|
| **Order Number** | J1711-110 |
| **Order Date** | 11/9/2017 |
| **Delivery Date** | 1/2/2018 |
| **Terms** | Net 60 |
| **Special Terms  -  See Note #** | |
| **Ship Via** | |
| **Freight** | FOB Ex-Works |
| **Approved by:** | 11/10/2017  CCB 11/10/17 |

| Item # | Cost Code | Description | Quantity | UOM | Rate | Amount |
|---|---|---|---|---|---|---|
| 1 | 3-1-100 | All materials and labor (including QA/QC, material handling and other support activities) required to fabricate and galvanize structural steel in accordance with the attached drawings, standards and specifications. Do NOT include shipping or fireproofing.<br><br>J-1711 | 1.000 | Lot | $938,700.00 | $938,700.00 |
| 2 | | General Notes:<br><br>1. Terms of payment are : Net 60<br><br>2. Delivery:  Eight (8) weeks after receipt of IFC drawings.<br><br>3. Drawings will be issued under separate transmittal.<br><br>4. Bolting required for field erection shall be provided by fabricator.<br><br>5. All structural members, handrails and grating shall be hot dip galvanized.<br><br>6. If connection detailing is required by the fabricator, it shall be in the fabricator's scope of supply.<br><br>7. The cost of additional fabrication shall be as follows:<br><br>0 - less than 12 lb/ft  $1.70/lb<br>13 - 21 lb/ft  $1.65/lb<br>22 -39 lb/ft  $1.30/lb<br>40 -79 lb/ft  $1.15/lb<br>Over 80 lb/ft  $1.10/lb<br>Rectangular Platforms $2.00/lb<br>Circular Platforms $2.70/lb<br>Rectangular Grating $11.00/ft²<br>Circular Grating $18.50/ft²<br>Straight Angle Handrail $3.30/lb<br>Circular Angle Handrail $6.30/lb<br>Caged Ladders $75.00/ft<br>Ladders without cage $45.00/ft | | | | |

**Initiated By:**   R. Velez

I



**KP ENGINEERING**

# PURCHASE ORDER

5555 Old Jacksonville Hwy
Tyler, Texas 75703
Telephone: (903) 534-9155    Fax: (903) 534-9133

| | |
|---|---|
| **Supplier** | Sefton Steel, LP<br>Attention: Patrick Collier<br>1830 Aldine Mail Route<br>Houston TX 77039<br>(281)449-8677 |
| **Deliver to** | See Note 12 |

| | |
|---|---|
| **Order Number** | J1711-110 |
| **Order Date** | 11/9/2017 |
| **Delivery Date** | 1/2/2018 |
| **Terms** | Net 60 |
| **Special Terms  - See Note #** | |
| **Ship Via** | |
| **Freight** | FOB Ex-Works |

Approved by: _____

| Item # | Cost Code | Description | Quantity | UOM | Rate | Amount |
|---|---|---|---|---|---|---|
| | | Safety Gates          $300.00/Ea<br>Detailing          $85.00/Hr<br>Shop Labor          $50.00/Hr<br>Welded Trusses          $1.85/lb<br>Welded Framed          $2.00/lb<br>Material Cost (Galv.)          $0.75/lb<br>Material Deletion          Less 5% of its<br>                    Unit Pay Category | | | | |
| | 8 | All technical and commercial questions shall be sent to:<br><br>KP Engineering<br>Attention: Ricardo Velez<br>5555 Old Jacksonville Hwy<br>Tyler, Texas 75703<br>Tel. No.: 903-630-7721<br>E-mail: rvelez@kpe.com | | | | |
| | 9. | All vendor data shall be submitted in electronic format to:<br><br>E-mail: documentcontrol@kpe.com<br>Copy: rvelez@kpe.com | | | | |
| | 10. | Deliveries will be accepted between 8:00 am and 3:30 pm, Monday through Friday. | | | | |
| | 11. | Invoice shall be sent to:<br><br>AccountsPayable@kpe.com<br><br>Along with Invoices, please provide documentation such as:<br><br>Proof of delivery (POD)<br>Packing Lists | | | | |

Initiated By:  R. Velez

2



**KP ENGINEERING**

**PURCHASE ORDER**

5555 Old Jacksonville Hwy
Tyler, Texas  75703
Telephone:  (903) 534-9155    Fax:  (903) 534-9133

| Supplier | Sefton Steel, LP |
| --- | --- |
| | Attention:  Patrick Collier |
| | 1830 Aldine Mail Route |
| | Houston TX 77039 |
| | (281)449-8677 |

| | |
| --- | --- |
| **Order Number** | J1711-110 |
| **Order Date** | 11/9/2017 |
| **Delivery Date** | 1/2/2018 |
| **Terms** | Net 60 |
| **Special Terms  - See Note #** | |
| **Ship Via** | |
| **Freight** | FOB Ex-Works |

Deliver to   See Note 12

Approved by: _____

| Item # | Cost Code | Description | Quantity | UOM | Rate | Amount |
| --- | --- | --- | --- | --- | --- | --- |
| | | 12.  Contact Ashley Keeter when items on this purchase order and related change orders are ready for shipment.<br><br>Ashley Keeter<br>Email: Expediting@kpe.com<br>Tel : 903-630-7548<br><br>Purchase Order Attachments :<br><br>1.   KP Engineering  Terms and Conditions Dated 05/18/2016 (2 Pages)<br><br>2.   KPE Sales Tax Exemption Permit  (1 Page)<br><br>3.   J1711-0501 KPE Structural Steel Fabrication Specification, Revision 0 (12 Pages) | | | | |

**Purchase Order Total**          **$938,700.00**

Supplier ("Seller") is to sign and date this purchase order in the space provided below acknowledging acceptance of this order and all attachments.  The original signed purchase order must be returned to lparsons@kpe .com.   KP Engineering LP takes it as agreement for the content in its entirety unless we receive objection within ten  (10) business days of receipt of order.

Accepted By: _____

Date: _11-15-17_

Initiated By:  R. Velez

3

# KP ENGINEERING
# PURCHASE TERMS AND CONDITIONS

These purchase terms and conditions apply to all purchases made by **KP Engineering** ("Buyer") from the supplier ("Seller") indicated on the face of this purchase order or a separate agreement incorporating these purchase terms and conditions (the "Order"). All sales by Seller of the materials, articles, items, work and goods subject hereof ("Goods") are expressly limited and conditioned upon Seller's acceptance of these terms and conditions and any additional or differing terms proposed by Seller in any document, including Seller's acknowledgement, shall be void and of no effect, unless accepted in writing by Buyer. Buyer's references to the Seller's quotation in this Order shall not be construed so as to have the general terms and conditions contained therein being incorporated into this Order. If this Order is deemed an acceptance of a prior offer by Seller, such acceptance is expressly conditioned upon Seller's assent to the additional or different terms set forth in the Order.

**1.  ACCEPTANCE OF ORDER.**  Seller's shipment of or furnishing of Goods, acknowledgment of this Order, commencement of performance or acceptance of any payment shall constitute conclusive evidence of Seller's acceptance of this Order.

**2.  PRICE.**  The price stated in the Order excludes all taxes, duties, fees, charges, packaging, freight, and expenses payable by Buyer, unless specifically noted on Order. Seller must report and pay all provincial, local, state, and federal taxes, including, but not limited to, transfer, VAT, sales, use, excise, occupational, gross receipt, and income taxes, and shall indemnify and hold Buyer harmless from any liability arising therefrom. Seller represents that the price specified in this Order does not exceed the selling price for same or substantially same items to any other buyer, taking into account the quantity and applicable law.

**3.  PAYMENT AND SET-OFFS.**  Invoices must be supported by such documents as Buyer may require. Individual invoices showing purchase order number, items purchased and detailed price information including taxes, duties, freight, and other fees and charges must be issued for each shipment. Buyer shall make payment of approved invoices for the Goods conforming to the requirements of this Order on the payment terms stated on the face of this Order. Payments may be withheld or portions thereof may be deducted by Buyer if, in Buyer's opinion, Seller failed to perform in accordance with the provisions of this Order, or if set-offs in favor of Buyer in this or other transactions are asserted. Retention shall be as indicated on the face of this Order. Payments of invoices will be due net 60 days after Buyer's receipt of acceptable invoice.

**4.  PAYMENT TO SELLER'S SUPPLIERS.**  Seller shall timely pay claims of all of its suppliers furnishing goods and services for or used in providing the Goods. Seller agrees that Buyer may, at Buyer's option, make payments directly to Seller's suppliers whenever Buyer has reason to believe the Seller has not paid or is likely not to pay promptly such suppliers amounts due them for goods and services used for this Order. Seller hereby grants to Buyer a security interest in the Goods or parts thereof, for which Buyer pays or advances funds under this Order, to the extent of such payments or advance funds. Seller, if so requested, shall execute and file all documents and financial statements necessary to perfect such security interest. Seller shall furnish, if requested, as condition of payment, releases, and waivers of lien and claims consisting of terms acceptable to Buyer before payment of invoices are made hereunder.

**5.  EXPEDITING.**  Seller and its suppliers shall, at no additional cost to Buyer, expedite delivery, to meet established delivery schedules. When deemed advisable by Buyer, this Order shall also be subject to expediting by Buyer or its customer, and Seller hereby grants free, safe, and clear access to Seller's and Seller's suppliers' premises for expediting purposes.

**6.  QUALITY CONTROL.**  Seller shall maintain a proper and consistent quality program which is acceptable to Buyer or one which is customary in the industry, if no requirement is specified, to assure that the Goods shall comply with the standards of quality stated in the Order and meet the requirements of this Order in workmanship, materials, safety, appearance, performance, and reliability.

**7.  INSPECTION AND ACCEPTANCE OF GOODS.**  The Goods are subject to Buyer's and its customers' inspections and tests at all times and places. If requested by Buyer, Seller will provide Buyer with the results of all samplings, analyses, inspections, or tests relating to this Order. Seller shall, without additional charge, provide to Buyer and its customers, facilities and assistance for safe and convenient inspection. In addition to other remedies hereunder or available under law, Buyer may reject or revoke acceptance of nonconforming Goods. The making of, or failure to make any inspection of, payment for, or acceptance of Goods will in no way impair Buyer's right to reject or revoke acceptance of nonconforming Goods at any time. Rejected goods will be held at Seller's risk and expense and will be returned or disposed of at Seller's expense. Buyer's review or approval of Seller's methods, manufacturing procedures, drawings, calculations, and other documents shall not relieve Seller of any responsibility for the Goods.

**8.  PACKING AND SHIPPING.**  The Goods shall be suitably preserved, containerized, packaged and packed and otherwise prepared for shipment in accordance with the instructions of Buyer and applicable carrier regulations, so as to prevent damage and deterioration. Each container shall be marked to show the Order number. The container and Order number shall be indicated on the bill of lading. The packing sheet, showing, among other things, Order number, shall be included in each package. Copies of packing sheets and the original bill of lading or express receipt, each showing Buyer's purchase order number, are to be mailed the same day the Goods are shipped.

**9.  DELIVERY.**  Seller must promptly notify Buyer of any delay or anticipated delay of performance and delivery. Deliveries are to be made both in quantities and on terms specified in this Order. If the Goods are not delivered on the date specified in the Order and deferred delivery has not been approved by Buyer, Buyer will not be required to accept the Goods, or may elect to accept the Goods without prejudice to its rights under this Order or provided by law. Seller shall furnish the Goods specified by this Order or specifications, plans, drawings or documents incorporated herein. Delivery will not be considered complete until all of the Goods, including all documentation, are delivered and Buyer has given its final acceptance in writing. The Goods or portions thereof, including but not limited to, data and work in progress, will become the property of Buyer and title to them will pass to Buyer upon delivery of the Goods to the delivery point designated, or when Buyer makes payment therefore, whichever occurs earlier. Seller shall be responsible for and shall bear risk of loss and damage to the Goods or portions thereof, until final completion of their delivery. However, loss or damage, which results from Seller's nonconforming preservation, packaging, packing, crating, or containerization, whenever occurring, shall be the responsibility of Seller. Seller shall furnish all installation, operation and maintenance data and all relevant and applicable product and operation safety information, and complete and accurate Material Safety Data Sheets for the Goods.

**10.  WARRANTIES.**  Seller warrants that the Goods and all portions thereof will: (a) be free from liens, encumbrances, and defects in title, design, material, and workmanship, (b) conform to all current and applicable specifications, tests and performance criteria, (c) be new, of merchantable quality, and (d) meet and comply with all process, design, utility, mechanical, performance and other guarantees required by this Order. If (a) during the period ending the latter of eighteen (18) months from shipment or twelve (12) months after commencement of commercial operation of the Goods or, (b) at any time with respect to liens, title or latent defects, the Goods or parts thereof are found to be defective or otherwise fail to conform to the warranties, and Buyer so notifies Seller, the Seller shall, at Seller's sole expense and using its best efforts, promptly correct such nonconformity to the satisfaction of Buyer, failing which (a) Buyer may reject or revoke acceptance and cover by making purchase of substituted goods; (b) Buyer may proceed to correct Seller's nonconforming work by the most expeditious means available, in which case, the costs for such correction shall be for Seller's account; or (c) Buyer may retain the nonconforming Goods with an equitable reduction to the Order price to reflect the diminished value of such nonconforming Goods. "Commercial operation" means the use of the goods by the ultimate user and does not mean the resale of the goods by Buyer to its customer. Buyer may assign to its customers and end-users of the Goods any warranty rights Buyer may have under this Order, provided however, that this Order shall not, and shall not be construed so as to, establish privity of contract between Seller and Buyer's customers or end-users of the Goods. Seller agrees that nothing in this Order excludes or in any way limits other warranties provided for in the Order or by law.

**11.  DATA AND EQUIPMENT.**  Notwithstanding any proprietary legend or copyright notices to the contrary, Buyer and its customers and end-users of the Goods, may copy and reproduce documents and information furnished by Seller at any time and distribute such copies or reproductions to others for the limited purposes of designing, constructing, operating, maintaining, permitting and licensing. All data, inventions, improvements, information, drawings and specifications which are owned, furnished by, charged to, or paid for by Buyer, or which is developed or produced by Seller as the result of this Order, shall be the property of Buyer and, unless stated otherwise by Buyer, shall be promptly furnished to Buyer at the completion or termination of this Order. Seller may not grant security interest in the Goods or any part thereof in favor of any third party.

18-May-2016

**12. CONFIDENTIALITY.** Buyer shall have and retain ownership of and Seller shall not disclose to any third party or use or have others use, except as and to the extent actually required for the performance of this Order, any information relating to this Order, except with the prior written approval by Buyer.

**13. CHANGES.** Buyer may at any time, by written notification, suspend or extend the delivery schedule, make changes in the quantities ordered, place of delivery, method of shipment, drawings, designs, or specifications applicable to this Order. If any such change affects Seller's cost or time of delivery, an equitable adjustment may be made to the Order price or delivery, as appropriate, by written agreement of the parties. Request for adjustment must be brought to the attention of Buyer, by written notice, within fifteen (15) days of Buyer's request for change, or Seller shall forego its right to such adjustments. Changes affected without prior written approval of Buyer shall be Seller's responsibility and costs thereof shall be borne by Seller.

**14. TERMINATION.** Nothing in these terms and conditions will limit or affect the right of Buyer to terminate the Order.
A)   For cause: 1.) if Seller breaches any term of this Order; or 2.) if, in the opinion of Buyer, Seller fails to make progress or fails to provide reasonable assurances of same, thereby endangering timely delivery; or 3.) in case of any proceeding by or against Seller in bankruptcy, insolvency, appointment of receiver or trustee or assignment for the benefit of creditors, then in any of such events Buyer may cancel the Order in whole or in part by written or facsimile notice to Seller, and Buyer shall have no liability or obligation whatsoever to Seller by reason of or resulting from such cancellation. Seller shall indemnify and hold harmless Buyer for all costs, losses, expenses, and damages incurred by Buyer by reason of such termination for cause.
B)   In addition to and without prejudice to the right to cancel under the preceding paragraph, Buyer may terminate the Order in accordance with the following provisions:
1.   If the Order covers goods manufactured or fabricated to Buyer's specifications or specifications especially prepared by Seller for Buyer, then at any time prior to delivery of all goods Buyer may terminate the Order in whole or in part by written or facsimile notice to Seller, and in such event the following provisions apply:
    (a)   Immediately upon receipt of such notice of termination or upon such other date as may be specified on said notice, Seller shall stop all work in connection with the Order except as otherwise directed by Buyer.
    (b)   Buyer shall pay and Seller shall accept as full compensation Seller's actual direct out-of-pocket costs to the date work is stopped, including Seller's reasonable expense in connection with termination of any subcontracts, all as approved by Buyer, plus reasonable profit. Provided, however, that in no event shall the total amount to be paid to Seller upon such termination plus payments previously made, exceed that portion of the total purchase price specified in the Order that the work actually performed to the date work is stopped bears to the entire work to be performed.
    (c)   The goods or uncompleted portions of the goods shall be the property of Buyer and Seller shall safely hold the same for a reasonable time, subject to receipt of Buyer's written shipping or other disposition instructions.
2.   If the goods covered by the Order are standard stock merchandise, Buyer may terminate all or any part of the unshipped portion of the Order at any time by written or facsimile notice to Seller, and in such event Buyer shall have no obligations for cancellation, restocking or other charges or otherwise except to make payment for the goods actually shipped and in transit prior to such termination.

**15. DEFAULT.** In case of Seller's default or Buyer's termination for cause, Buyer may, in addition to any rights or remedy provided by this Order or applicable law and equity, terminate all or parts of this Order by written notice to Seller, without any payment or other liability to Buyer on account thereof. In case of such default or termination for cause, Buyer may also take possession, by whatever reasonable means and at whatever location and time, of all materials used in performance of this Order and finish the work or acquire the Goods by whatever method it may deem expedient, in which case Seller shall not be entitled to payment, if any, until all of the Goods are delivered to Buyer in accordance with this Order.

**16. INDEMNIFICATION.** TO THE FULLEST EXTENT ALLOWABLE BY LAW, SELLER SHALL, AT ITS SOLE EXPENSE, DEFEND, INDEMNIFY AND HOLD HARMLESS BUYER AND ITS AFFILIATE AND PARENT COMPANIES, THEIR SUCCESSORS AND ASSIGNS, CUSTOMERS, AND USERS OF THE GOODS, AGAINST ALL DAMAGES, LOSS, COSTS, CLAIMS, LIENS, ENCUMBRANCES, LIABILITIES, AND EXPENSES (INCLUDING ATTORNEY'S FEES) ("CLAIMS") ARISING OUT OF OR RESULTING FROM ANY ACT OR OMISSION OF SELLER, ITS AGENTS, EMPLOYEES, SUPPLIERS OR SUBCONTRACTORS, PROVIDED THAT SELLER WILL NOT BE LIABLE FOR CLAIMS TO THE EXTENT ARISING OUT OF BUYER'S SOLE NEGLIGENCE. Buyer's remedies set forth in this Order shall be cumulative and additional to any other or further remedies provided by law or equity.  Seller represents and warrants that all Goods delivered and services performed under this Order and the sale or use thereof do not infringe upon any patent, trade secret, copyright, trademark, or any other intellectual or proprietary rights of any person or entity and Seller shall, at Seller's expense, defend, indemnify and hold harmless Buyer and its affiliate and parent companies, their successors and assigns, customers, and users of the Goods, from and against all claims, demands, actions and liability based on alleged or actual infringement thereof. In the event the Goods or parts thereof are adjudicated to constitute an infringement, Seller shall either: (a) procure for Buyer and its customers and end users of the Goods the right to continue selling or using the Goods; (b) replace the same with non-infringing Goods; or (c) modify the Goods so they become non-infringing, provided such replacement or modification must be approved in advance by Buyer and will not materially alter their dimensions or increase in any amount the cost of their use, sale, operation or maintenance.

**17. FORCE MAJEURE.** In the event of war, terrorism, fire, flood, strike, labor unrest, accident, riot, act of government authority, natural disaster, or contingencies beyond reasonable control of Buyer or Seller, interfering with Buyer's or Seller's manufacture, use or consumption of the Goods, Buyer's or Seller's obligations so affected shall be eliminated from the Order without liability, but the Order shall otherwise remain unaffected.

**18. INSURANCE.** Seller shall purchase and maintain in full force and effect, as appropriate and required by law, such insurance which shall protect Seller, Buyer, its parent and affiliate companies, their successors and assigns, customers, and users of the Goods from loss, expense or claims of every kind, to include, but not limited to, losses which may arise under worker's compensation acts and other employee benefit acts, or damages because of bodily injury, including death, damages to any property, or which may arise out of operation of law or court order.

**19. COMPLIANCE WITH LAW.** Seller warrants that Seller and the Goods sold hereunder shall comply to the fullest extent with all applicable federal, state, and local codes, laws, statutes, regulations, orders, rules, ordinances, and standards of governmental authorities and courts, including, but not limited to, those pertaining to safety and health, the Fair Labor Standards Act, the Civil Rights Act of 1964, Executive Order No. 11246, Section 503 of the Rehabilitation Act of 1973, as amended, the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended (38 U.S.C. 2012), the Occupational Safety and Health Act, the Foreign Corrupt Practices Act of 1977, Export Administration Act, and the Immigration Reform and Control Act of 1986, which may apply to the Goods or this Order.

**20. HAZARDOUS/TOXIC SUBSTANCES.** Seller warrants to Buyer that no product is the product, or by-product, of any hazardous or toxic waste as defined by applicable federal or state law.

**21. MISCELLANEOUS.** The provisions of this Order shall be binding upon and inure to the benefit of Buyer and Seller and their successors and permitted assigns. Buyer and Seller are independent contractors. The provisions of this Order are severable and the invalidity or unenforceability, in whole or part, of any provision shall not impair or affect the remainder of that provision or other provisions. The paragraph headings of this Order are for convenience only and shall not be deemed to affect in any way the language of the provision to which they refer. This Order shall be governed by the laws of the **State of Texas** and the parties agree that the courts of, and of the federal courts sitting in, the **State of Texas** will have exclusive jurisdiction between the parties and the parties hereby submit to such jurisdiction. All covenants, indemnities, guaranties, and warranties by Seller shall survive the termination or expiration of this Order. This Order constitutes the entire agreement between the parties and supersedes all prior understandings and agreements between the parties. Waiver by either party of any breach of the terms and conditions contained herein will not be construed as a waiver of any other or continuing breach. If claims or legal proceedings are asserted or instituted by Buyer, Buyer will be entitled to recover from Seller all court costs and attorney's fees and expenses incurred by Buyer. No modification of this Order shall be valid, unless in writing, signed by Buyer.

**22. LIMITATION ON REMEDIES. BUYER/SELLER WILL NOT BE LIABLE FOR ANY LOST PROFITS OR CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES.** Buyer's total liability, and Seller's exclusive remedy against Buyer, for any cause of action, under, related to or arising out of the Order is expressly limited to the amount of the purchase price. Seller's total liability, and Buyer's exclusive remedy against Seller, for any cause of action, under, related to or arising out of the Order is expressly limited to the amount of the purchase price. In no event shall Seller be liable to Purchaser, any successor in interest or any beneficiary of Purchaser, for any consequential, incidental, indirect, special or punitive damages.

18-May-2016



01-339
(Rev.9-07/8)

# TEXAS SALES AND USE TAX RESALE CERTIFICATE

| Name of purchaser, firm or agency as shown on permit | Phone (Area code and number) |
|---|---|
| **KP ENGINEERING LP** | **903-534-9155** |

Address (Street & number, P.O. Box or Route number)
**5555 OLD JACKSONVILLE HWY**

City, State, ZIP code
**TYLER, TX 75703**

Texas Sales and Use Tax Permit Number (must contain 11 digits)

**1 3 2 0 1 0 7 7 8 5 9**

Out-of-state retailer's registration number or Federal Taxpayers Registry (RFC) number for retailers based in Mexico

(Retailers based in Mexico must also provide a copy of their Mexico registration form to the seller.)

---

I, the purchaser named above, claim the right to make a non-taxable purchase (for resale of the taxable items described below or on the attached order or invoice) from:

Seller: Sefton Steel, LP

Street address: 1830 Aldine Mall Route

City, State, ZIP code: Houston, Texas 77039

Description of items to be purchased on the attached order or invoice:

Description of the type of business activity generally engaged in or type of items normally sold by the purchaser:

**PROVIDE FULL SERVICE ENGINEERING, PROCUREMENT, FABRICATION, AND CONSTRUCTION SERVICES FOR CAPITAL PROJECTS**

The taxable items described above, or on the attached order or invoice, will be resold, rented or leased by me within the geographical limits of the United States of America, its territories and possessions or within the geographical limits of the United Mexican States, in their present form or attached to other taxable items to be sold.

I understand that if I make any use of the items other than retention, demonstration or display while holding them for sale, lease or rental, I must pay sales tax on the items at the time of use based upon either the purchase price or the fair market rental value for the period of time used.

*I understand that it is a criminal offense to give a resale certificate to the seller for taxable items that I know, at the time of purchase, are purchased for use rather than for the purpose of resale, lease or rental, and depending on the amount of tax evaded, the offense may range from a Class C misdemeanor to a felony of the second degree.*

| sign here ▶ Purchaser | Title ACCOUNTANT | Date 11/9/2017 |
|---|---|---|

This certificate should be furnished to the supplier. Do **not** send the completed certificate to the Comptroller of Public Accounts.



**KP ENGINEERING**    J-1711-0501 STRUCTURAL STEEL FABRICATION SPECIFICATION-Rev 0

**CONFIDENTIAL**    1 of 12

| REV. | DATE | BY | APPROVAL | PAGES ISSUED | REVISION DESCRIPTION |
|------|------|-----|----------|--------------|----------------------|
| 0 | 10/09/2017 | RAV | | 12 | Issued for construction |

KP Engineering LP
Structural Steel Fabrication Specification



**KP ENGINEERING**   **J-1711·0501 STRUCTURAL STEEL FABRICATION SPECIFICATION-Rev 0**

**CONFIDENTIAL**                                                                                    **2 of 12**

## TABLE OF CONTENTS

1.0   SCOPE

2.0   REFERENCES

3.0   QUALITY CONTROL

4.0   MATERIALS

5.0   CONNECTIONS

6.0   DRAWINGS

7.0   FABRICATION

8.0   DELIVERY REQUIREMENTS

9.0   SUBMITTALS

10.0   REWORK AND BACKCHARGES

11.0   RECORDS

KP Engineering LP
Structural Steel Fabrication Specification